## MINYARD v. PELUCIA DRAINAGE DIST.

(Division B. Dec. 31, 1923.)

[98 South. 225. No. 23598.]

CONSTITUTIONAL LAW. *Eminent domain. Owner held to have waived claim to damages by failure to make claim or take appeal from assessment; notice by publication held "due process of law."*

Under chapter 195, Laws of 1912, as amended by Laws of 1914, chapters 269 and 271, providing for the creation of drainage districts and for the assessment of benefits and damages, and for proceedings to obtain compensation for damages, it is incumbent upon a landowner, where the commissioners do not assess him damages (after publication of notice as therein provided) to propound his claim for damages and demand a jury, or take an appeal from the order approving the assessment rolls of benefits and damages within the time allowed therein; and if he fails so to do he waives his claim to such damages. These proceedings being proceedings *in rem* and not imposing personal obligations, such notice as is provided in the statute (being by publication) constitutes "due process of law" to the property owner.

APPEAL from chancery court of Leflore county.

HON. G. E. WILLIAMS, Chancellor.

Suit by W. W. Minyard against the Pelucia Drainage District. Decree dismissed, and plaintiff appeals. Affirmed.

*Pollard & Hamner,* for appellant.

The commissioners assign two reasons for refusal to pay for the right-of-way: First, that Minyard forfeited his right to claim damages by failing to file notice in writing, within thirty days after filing the assessment roll of betterments, that he demanded the assessment of his damages by jury. Second, that Minyard has no right to claims any damages by reason of the construc-

tion of the drainage canal across his land for the reason that he signed the original petition to the board of supervisors asking that a drainage district be organized, and that he is estopped now from claiming anything by reason of the taking of his land for a right-of-way because he petitioned for the organization of the district.

As we understand the law, the drainage commissioners may obtain a right-of-way by agreement with the landowner, and in case no agreement can be reached a right-of-way may be acquired either by condemnation proceeding or by a proceeding in the chancery court. The proceeding in the chancery court is in lieu of the provisions of chapter 43 of the Mississippi Code of 1906, for the condemnation of property for public use. In order to condemn under the first method, the commissioners must assess the damages at the same time the betterments are assessed. If the damages for land taken are not assessed then the chancery court procedure is left open. The commissioners cannot pursue both methods at the same time.

The drainage district was organized under chapter 195, Laws of 1912, as amended by chapters 269 and 271 of the Laws of 1914. It is provided by section 7 of chapter 269, Laws of 1914, that after the organization of the district—"The commissioners shall proceed to assess the land within the district and shall inscribe in a book the description of each tract of land, the benefit to accrue to each tract by reason of such improvement, and shall enter such assessments of benefits opposite the description, together with an estimate of what the landowner will probably have to pay on such assessment for the first year. . . .

"The commissioners shall also assess and place upon such roll or book of assessment opposite each tract of land all damages that will accrue to any landowner by reason of the proposed improvement, including all injury to lands taken or damaged. . . .

"When their assessment is completed, the commissioners shall subscribe such assessment and deposit it with the clerk of the board of supervisors, where it shall be kept and preserved as a public record.   .  . . .

"Any owner of real property within the district who conceives himself to be aggrieved by the assessment of benefits  .  .  .´ shall present his complaint to the board of supervisors  .  .  .  and the board of supervisors shall consider his protest or complaint and enter its findings thereon and either confirm the assessment or increase or diminish the same and its finding, whether protest is filed or not, shall be final and have the force and effect of a judgment from which an appeal may be taken within twenty days to the chancery court or chancellor in vacation, or to the supreme court of the state if the decision be of the chancery court, either by the property owner or by the commissioners of the district."

These are the provisions of section 7, chapter 269, Laws of 1914. The first part of section 1, chapter 271, Laws of 1914, aforesaid, provides that where the drainage commissioners have undertaken to acquire land under the first method herein referred to, that is, where they have undertaken to "assess and place upon said roll or book of assessment, opposite each tract of land, all *damages* that will accrue to any landowner by reason of the proposed improvement, including all injury to lands taken or damaged," a landowner shall object to the assessment of his land and give notice within thirty days after the assessment is filed that he demands assessment of his damage by jury, and in that event the "commissioners shall institute in the proper court in the proper county an action to condemn the lands that must be taken or damaged in making such improvement, which action shall be in accordance with the proceedings for the condemnation of property for public use provided in chapter 43, Mississippi Code of 1906, and all amendments thereto.

.  .  .
133 Miss.—54

"The commissioners may, at any time after the organization of the district, appraise the value of any land taken or about to be taken for the purpose of the proposed improvement, according to the plans of the district on file and the damages resulting to the owners from such taking. . . . When the commissioners shall have made their appraisement of lands taken, they shall certify to the same and file it with the clerk of the chancery court of the county in which the land lies and the clerk shall thereupon set down and fix the time for the hearing of objections to said appraisement, at the request of the commissioners, to be heard by the chancery court or chancellor in vacation. And the clerk shall issue a summons directed to the sheriff of the county or counties in the state in which any landowner or other person interested may reside, commanding him to summon such owner or owners or interested persons to be and appear at the time and place named . . .

"If the landowner is not satisfied with the amount allowed by the commissioners for lands taken by reason of the construction of such proposed system according to the plan of said district, he shall file written objection thereto on or before the day named in the summons or notice."

"If on the hearing by the court or chancellor in vacation no written objections are filed, a decree confirming the appraisement shall be rendered, and upon payment of said amount to the chancery clerk, the commissioners of the district may enter upon and take possession of said property, and appropriate it to the public use of said district, and the title to said property shall thereupon vest in said district. The clerk shall receipt upon the decree for the money paid, and said decree with the receipt thereon shall be recorded."

"If written objections are filed on or before the day set for hearing the court or chancellor in vacation shall pro-

ceed to hear the objection filed, trying the cause or causes without the intervention of a jury.''

''No judgment by default shall be entered against an owner or person interested residing in this state unless it appear that he has been duly served with summons at least two days before the return day, and no judgment by default shall be entered against a non-resident or unknown person or persons interested unless proper publication has been made.''

Section 1, chapter 271, Laws 1914, from which the above quotations have been taken, further provides for proof of publication and for a trial of all objections in entirety or in severalty by the court and provides for an appeal from the decision of the chancellor and it makes a further provision that:

''In addition to the method above prescribed for the acquisition of lands for the purpose of the district, drainage districts shall have and are hereby given and granted the right of eminent domain, and they may proceed to acquire rights-of-way by proceeding under the Code before the court of eminent domain.''

It is thus clearly seen that the legislature intended to provide two methods by which the commissioners might obtain, through the courts, title to land for right-of-way. One method is by eminent domain and the other by a proceeding in the chancery court. Under either method the landowner is entitled to notice of the proceedings, and under either method there is a provision for the vesting of title, a judgment by the court of eminent domain or a decree by the chancery court.

We contend that the drainage commissioners in the case now before the court never undertook to follow the provisions of section 6, chapter 269, Laws of 1914. It will be seen that no attempt was made by the board when they filed the assessment roll, to fix any damages for a right-of-way for the canal. The commissioners could not pursue both courses because the statute specifically

says that the procedure in chancery court is in lieu of, as is distinctly set out in the second paragraph to section 1, chapter 271, Laws of 1914. Each method of acquiring a right-of-way is complete in itself.

We have always understood due process of law, where a man's life, liberty or property were about to be taken from him, to mean personal service of process. In a procedure like this where the title to a specific tract of land is to be obtained, we believe that the safest course for the public and the individual both would be that which would give the landowner notice to answer the procedure in which a definite demand of him is made for a definite thing and due and personal notice served on the owner, if a resident of the state, before a final decree could be rendered taking the thing sought. We think that this is what is meant by the provisions of the constitution in section 14, which provides that: ''No person shall be deprived of life, liberty or property except by due process of law.''

The commissioners denied that they were proceeding under that part of the law which led to condemnation by the exercise of the right of eminent domain and deliberately *pursued* the other method, which is an entire, distinct and separate provision under the law for the obtaining of a right-of-way.

The statute contemplates the vesting of title to the right-of-way for the canals in the drainage district, and there is a distinction and difference between the right of assessing a betterment against the landowner and the right to take the *title* to the land.

*E. L. Mounger,* for appellee.

This proceeding was instituted under chapter 195, of the Laws of Mississippi, Acts of 1912, as amended by chapter 271 of the Laws of Mississippi, Acts of 1914, and

amendments thereto. This petition was filed by the board of supervisors on April 21, 1920.

At the May term, 1920 of the board of supervisors, an order was made directing the clerk to publish a notice according to law, giving notice of the intention of the board to take action looking to the organization of said district on the 8th day of June, 1920, at the courthouse of said county.

On the 8th day of June, 1920, at the regular June meeting of said board, an order was made establishing said drainage district. On the 4th day of February, 1921, the board of drainage commissioners filed a report to the board of supervisors, setting out that they had adopted plans, specifications and estimates of the work proposed to be done in pursuance of the objects and purposes of the said drainage district, and that they had made the assessment of benefits on the different tracts of land in said drainage district, and now file the same with said board.

This assessment roll embraces the lands of the appellant now in controversy. Thereupon the clerk of the board of supervisors issued a notice and caused due publication thereof to all persons interested in said lands, setting out that the commissioners of said district had completed, subscribed and deposited with the clerk of the board of supervisors of Leflore county, Mississippi, an assessment roll of the lands to be benefitted in said district, and that said assessment roll is now on file in the office of said clerk; that all of said above described lands have been assessed for drainage purposes in said district; and that the owners of said lands, if they desire, may appear before the board of supervisors of Leflore county, Mississippi, at the courthouse, at its meeting to be held on the first Monday in March, 1921, and present complaints, if any they have, against the assessment of lands in said district.

On the 4th day of February, 1921, said commissioners also filed a report of additional lands not embraced within the bounds of said district, but which would be benefitted by the proposed improvements to be made.

Thereupon, due publication was made by the clerk, addressed to parties interested in this additional land, giving the opportunity to file objections to their assessments on or before the second day of March, 1921, said objections or protests to be heard at the March term of the board of supervisors. Mr. Minyard filed no exceptions, and made no claim for damages.

At the April term, 1921, the board of supervisors had a hearing on this matter, and entered an order. This order recited that the drainage commissioners had filed the plans and specifications of improvements of said district, and that the commissioners had completed their assessment roll of said district of benefits and damages, and the board adjudged that said assessment roll is complete according to law, and that said commissioners have subscribed such assessment, and deposited and filed it with the clerk of said board, and that due notice had been given according to law, to the landowners, to present complaints against the assessment of lands in the district, and the board of supervisors, having continued the hearing of the report of said commissioners, and the objection to the assessment made and filed by the said commissioners, until the April meeting of said board, and said board having heard part of the evidence on said report and said objections, and having continued the further hearing of said report until this date, ordered, among other things, that said amended map and specifications be, and the same are hereby adopted and confirmed, as the plans and specifications of the drainage work of said district; and said board has considered said protests and objections, all of said objectors being present in person or by counsel, and there being no other objections or exceptions, it is ordered that said

assessment roll filed by the said commissioners be changed and amended as appears by the amended assessment roll this day prepared 'and filed by said board.

The order further provides that said assessment roll so corrected and amended, and as changed and corrected, be approved, confirmed. and made. final as the assessment roll of said district, and is hereby entered against the lands included within said drainage district for the amount of the benefits, and that no damages are hereby allowed for assessments in favor of the owners of said lands.

Same of the landowners in said district came and filed exceptions and objections to their assessment, and also demanded an assessment of damages by a jury. Some of the landowners, took an appeal from the decision of the board of supervisors on their assessment. Mr. Minyard did none of these things, although duly notified by publication. He filed no objections 'or exceptions to the fact that the commissioners had reported no damages on the assessment roll, and although in the order of the board of supervisors, entered on the 13th day of April, 1921, the board found on confirmation and adoption of the assessment roll, that no damages were allowed and assessed, in favor of the owners of said land, those who pursued the method provided by the statute of exceptions to the assessment roll, excepting to the disallowance therein, and demanding an assessment of their damages by a jury, were heard and provided for at said hearing. Mr. Minyard did not, as we have said, file any objections to the assessment roll on which he was allowed no damages, nor did he appeal from the same, nor did he ask for the assessment of his damages by a jury, but nearly a year afterwards filed his original bill in the chancery court.

It will be seen that the commissioners filed their assessment roll as shown by the record, specifying the bene-

fits, and returned no assessment of damages as to any tract of land in the said district. The statute provides, Acts 1914, page 336, that: ''The commissioners shall also assess and place upon said roll or book of assessment, opposite each tract of land, all damages that will accrue to any landowner by reason of the proposed improvement, including all injury to lands taken or damaged; and when said commissioners return no assessment of damages as to any tract of land it shall be deemed a finding by them that no damages will be sustained.''

The commissioners returned no damages as to any tract of land, and according to the statute this was a finding by them that no damages would be sustained. This may, or may not, have been in accordance with the facts, but it was a finding that no damages were sustained. Those parties who were aggrieved thereby had a remedy, and some of them availed themselves of it, and were awarded some damages, but Mr. Minyard did not do any of these things.

Moreover, the said complainant and appellant, did not take an appeal from such findings of the board of supervisors within twenty days to the chancellor in vacation, as provided on page 337 of the Acts of 1914.

So this act provides that the appeal should be taken within the time fixed in this act, which is twenty days. Minyard did not do this, as he had a right to do.

Minyard did not object or except to the assessment of no damages, and did not give notice to the commissioners within thirty days after the assessment roll was filed, in writing, that he demanded assessment of his damages by a jury, and consequently he is construed to have acquiesced in their failure to assess damages in his favor.

Why he elected to do this when he is represented by the same able counsel who so successfully protected the

rights of Flowers and Williams, we do not know.  It cannot be claimed that because the board of commissioners acceded to the request of Flowers and Williams to assess their damages who had made a written request, that they led the appellant into error, who had not made any written request.  In the case of *Richardson* v. *Board of Supervisors,* 91 So. 565-566, the court says:  "The statute is complete within itself in that respect.  The legislature in naming in the statute the character of orders, judgments and decrees of boards of supervisors and chancery courts, from which appeals would be allowed, excludes the right of appeal from any other character of order, judgment or decree."  Citing the case of *Clarke, et al Drainage Commissioners,* v. *Strong,* 120 Miss. 95, 81 So. 643.

In other words, these two cases held that the statutory methods must be followed.  In the case of *Sabougla Creek Drainage District* v. *Provine,* 94 So. 889, the court says:  "The right of appeal from orders and decrees of either the chancellor or the board of supervisors in controversies governed by these statutes must be expressly provided for in them.  The rights of appeal therein provided are exclusive of all other rights generally given by other statutes of the state."  While this is speaking of appeals it bears out the principle that the remedies given by these statutes are exclusive.

"In the case of *Illinois Central Railroad Company* v. *Yocona Drainage District,* 91 So. 392, the court says: "The right to the appeal is governed by sections 7 and 19, chapter 269, Laws 1914, Hemingway's Code, section 4445 and 4486.  The first of these sections provides that an appeal may be taken from an order of the board of supervisors making such assessment, 'within twenty days to the chancery court or the chancellor in vacation; or to the supreme court of the state if the decision be of the chancery court, etc.'  We are of the opinion that the

limitation herein provided for is on an appeal both to the chancery and the supreme court, which conclusion is reinforced by the other section of the statute, hereinbefore referred to, which provides that: 'Whenever an appeal is allowed to be prosecuted under this act, the same shall be taken within the time fixed by this act.'"

In the case of *Wolford* v. *Williams,* 70 So. 823, 110 Miss. 637, which was a case where certain landholders in a drainage district sought to enjoin the tax collector from proceeding to collect taxes claimed to be due for drainage purposes, the court says, on page 644: "Being in court, it was the duty of the complainants in this case to come before the board of supervisors and object 'to such steps as they believed were unlawful; and if such proceedings were not regular, and orders were made by the board of supervisors in furtherance of the purposes of this drainage district which they believed to be irregular, the right of appeal to the circuit court from such order was granted them by statute."

In the case of the *Northern Drainage District* v. *Bolivar County,* 71 So. 380, the court holds that the legislature had the right to authorize the forming of such district upon such terms as to it seemed best. Page 382.

In the case at bar, Minyard let his chance go by to file a claim to have the damages assessed by a jury. He filed no exceptions or protests to his assessment; he took no appeal from the order confirming his assessment, and cannot now, as held in *Wolford* v. *Williams,* 110 Miss. 637, enjoin, as he has sought to do in this present action, or demand an assessment by a jury.

In the case of *Equen* v. *Arterbury,* 121 Miss. 76, on page 94, the court says: "This final order establishing a district is by the express provision of section 3, chapter 269, Laws of 1914, given all the force of a judgment, and from this order any owner of real property is given the right of appeal. The proceeding being statutory,

we must look to the statute for the available grounds for remonstrance."

Another reason why Mr. Minyard is not entitled to claim damages in this case is, because, he is one of the signers of the petition for the establishment of the drainage district. When the commissioners started to lay out Ditch No. 1, Minyard claimed that it ought to be placed somewhere else, and asked the commissioners to change the location to suit him. The commissioners agreed to do this, to please Mr. Minyard, and then Minyard said that they should not put a spade in the ground. The board then proceeded on the original route, as laid down in the plans. After a conference with the engineers and attorneys, the line was re-located as called for in the plans and specifications.

In the case of *Yazoo Delta Lumber Company* v. *Eastland,* 104 Miss. 553, on page 564, the court says: "There is but a single question in the case: Can the judgment of the board of supervisors approving the assessment roll be attacked collaterally by proving matters *in pais,* going only to the evidence upon which the final judgment of the board rested? Appellant did not appear and make objections to the assessment, and no appeal was taken from the judgment of the board. The chancellor decided that this sort of collateral attack could not be made in a proceeding to confirm the title of the purchaser at the tax sale. In our opinion the chancellor was right. Section 4296, Code 1906; *Brooks* v. *Shelton,* 47 Miss. 243; *Horne* v. *Green,* 52 Miss. 452; *North* v. *Culpepper,* 97 Miss. 730, 53 So. 419; *Moores* v. *Thomas,* 95 Miss. 644, 48 So. 1025."

Minyard signed this petition, and has waived his rights to compensation for damages. The court in the case of *Adams* v. *The City of Vicksburg,* 86 So. 855, on page 856, says: "And it is now the established law of the state, as announced in the latter case, that the abutting property owner on the street may waive her

right to compensation for damages done on account of grading the street, where the owner requests the work to be done, and it is done in the proper manner and without negligence, and we are constrained to follow the law as thus announced."

Argued orally by *R. V. Pollard* for the appellant, and by *H. C. Mounger,* for the appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant and others filed a petition before the board of supervisors of Leflore county for the creation of a drainage district under the provisions of chapter 195, Laws of 1912, and amendments thereto (Hemingway's Code, section 4434 et seq.). Notice was published in a newspaper for two successive insertions as therein provided, and on the day fixed in the notice the district was created, organized, and the commissioners appointed. A survey was made and reports and maps filed by the drainage commissioners. The report made showed the assessment of the benefits to the various property owners in the territory embraced in the district, but did not on its face show any assessment of any damages to any person within the territory. Thereafter two property owners filed claims for damages, and on proceedings had were awarded certain damages, but the appellant did not file a claim for damages or any exception to the report of the commissioners or to the assessment roll as made up by the commissioners within the time therein provided, nor did he take any appeal from the order of the board approving the assessment roll, although notice was published of the assessment roll so made in the manner provided by the act.

The commissioners proceeded with the work of laying out the drainage canal and the main canal as shown by the survey and report passed through the plantation of

the appellant. As the work progressed and was approaching the land of the appellant, he suggested to the parties in charge that it would be to his advantage to change the route of the canal so as to pass through a brake on the plantation. After consultation between the engineers and commissioners and attorneys for the drainage district such change was decided to be made; but thereafter, before reaching the premises of the appellant, he changed his mind and notified the parties they could not do any work across his land unless they adhered to the original route. Thereupon the original route was pursued, and, as the drainage canal approached the land of the appellant, he sued out a writ of injunction to compel the commissioners to assess him damages for the right of way which he alleges took twenty and seven tenth acres of the value of seventy-five dollars per acre, and also for damages in the sum of seven hundred and fifty dollars to build a bridge across the drainage canal when completed. The drainage district answered, setting up the failure of the appellant to claim damages at the time provided by law, and that appellant had taken none of the steps contemplated, and consequently was barred from claiming any damages now. The chancellor dismissed the bill and denied the relief asked, from which the appellant appeals to this court.

Section 6, chapter 195, Laws of 1912, as amended by the Laws of 1914, chapter 269 (Hemingway's Code, section 4444), provides:

"That as soon as said board of commissioners shall have formed its plan and shall ascertain the cost of improvement, it shall file the same with the clerk of the board of supervisors; said plans shall be accompanied by a map showing the location of all the main and lateral ditches, and shall be accompanied by specifications describing the character of the improvements to be made, the width and depth of the ditches, the probable quantity of earth to be removed and all other work to be done and the probable cost of draining said territory."

Section 7 of the act, as amended by chapter 269, Laws 1914 (Hemingway's Code, section 4445), provides:

"That said commissioners shall proceed to assess the land within the district and shall inscribe in a book the description of each tract of land, the benefit to accrue to each tract by reason of such improvement, and shall enter such assessments of benefits opposite the description, together with an estimate of what the landowner will probably have to pay on such assessment for the first year. . . .  The commissioners shall also assess and place upon said roll or book of assessment, opposite each tract of land, all damages that will accrue to any landowner by reason of the proposed improvement, including all injury to lands taken or damaged; and when said commissioners return no assessment of damages as to any tract of land it shall be deemed a finding by them that no damages will be sustained. . . .  When their assessment is completed, the commissioners shall subscribe such assessment and deposit it with the clerk of the board of supervisors, where it shall be kept and preserved as a public record. Upon the filing of such assessment, the clerk of the board of supervisors shall give notice of the fact by publication for two weeks by two insertions in some newspaper having a *bona fide* circulation in each of the counties within which the lands of the district may lie; such notice shall give a description of the lands assessed in as large tracts as the description will permit; and shall state that said lands have been assessed for drainage purposes in said district; that the owners of said lands, if they desire, may appear before the board of supervisors on a certain day, not less than ten days after the date of the last publication (naming the day), and present complaints, if any they have, against the assessment of land in the district; any owner of real property within the district who conceives himself to be aggrieved by the assessment of benefits, or deems that

the assessment of other lands in the district is inadequate, shall present his complaint to the board of supervisors on the day named in said notice . . . not less than ten days after the last publication of said notice; and the said board of supervisors shall consider said protest or complaint and enter its findings thereon, either confirming such assessment, or increasing, or diminishing the same; and its finding, whether protest is filed or not, shall be final and have the force and effect of a judgment from which an appeal may be taken within twenty days to the chancery court or chancellor in vacation. . . .

"The assessment roll, so prepared and filed by the commissioners, when approved by the board of supervisors, shall stand as a final assessment of benefits upon the lands of the said district. . . ."

Section 4446, Hemingway's Code (section 8 of the act as amended by the Laws of 1914), provides: That any property owner may accept the assessment of damages in his favor, made by the commissioners or acquiesce in their failure to assess damages in his favor, and shall be construed to have done so unless he gives to said commissioners within thirty days after the assessment is filed, notice in writing that he demands assessment of his damages by jury, in which event the commissioners shall institute in the proper court in the proper county, an action to condemn the lands that must be taken or damaged in making of such improvements, which action shall be in accordance with . . . chapter 43 of the Mississippi Code of 1906, and all amendments thereto. . . ."

Section 4447, Hemingway's Code, provides: "The commissioners may, at any time after the organization of the district, appraise the value of any land taken or to be taken for the purposes of the proposed improvement, according to the plans of the district on file and the damages resulting to the owners from such taking. . . .

And they may make a complete appraisement of all such lands, taken or to be taken, at one time, or at any time make appraisements as it becomes necessary or desirable. When the commissioners shall have made their appraisement of lands taken, they shall certify to the same and file it with the clerk of the chancery court of the county in which the land lies, and the clerk shall thereupon set down and fix the time for the hearing of objections to such appraisement, . . . to be heard by the chancery court or the chancellor in vacation. And the clerk shall issue a summons directed to the sheriff of the county .. . .· in which any landowner or other person interested may reside, . . . to be and appear at the time and place named. . . .

"If any owner is not satisfied with the amount allowed by the commissioners for lands taken, . . . he shall file written objections thereto on or before the day named in the summons or notice. . . .

"If written objections are filed, . . . the court or chancellor in vacation shall proceed to hear the objections filed, trying the cause or causes without the intervention of a jury."

It is the contention of the appellant that, inasmuch as the commissioners proceeded under the provisions of section 4447, Hemingway's Code, to assess the damages for those owners, that he has a right, or any other property owner, to propound a claim and have damages allowed him, notwithstanding no objections were filed to the assessment within the time prescribed by the statute for such to be done.

As we understand the statute, it is incumbent upon the property owner, when the assessment roll is filed and notice given, to appear and propound his claim for damages within the time mentioned therein. If he does not do so he waives the right to compensation and cannot thereafter propound a claim or proceed to obstruct the work until he shall have been paid for the right of way

over his land and other damages. If he does propound his claim, then the drainage commissioners have the option to either proceed under the provisions of chapter 43, Code of 1906, or to proceed under section 4447, Hemingway's Code.

The appellant introduced on the hearing the commissioners and offered to prove by them that they made no assessment of damages to any property owner, but that they proceeded upon the view that there were no damages but only benefits, but this proof was excluded by the chancellor.

Appellant contends that because the commissioners only assessed benefits and did not assess or intend to assess damages he is not concluded by the assessment roll. The trouble with his position here is that the statute expressly provides that, if no damages are assessed by the commissioners it is taken as finding that no damages in fact are suffered.

It appears from the evidence of these commissioners that practically everybody contemplated granting a right of way without compensation because of the great benefit that would flow to the land from the construction of this drainage system, and that the failure to assess damages for the taking of their right of way resulted in lowering the assessment of benefits to the various property owners. However mistaken the commissioners may have been about their duty in allowing compensation for the right of way, their failure to allow it under the statute amounts to a disallowance for anything under this item, and the failure of the property owner to propound his claim at the proper time, as provided in the statute, is an acquiescence by him in the act of the board in not allowing him such damages, and is a waiver of his right to compensation for such right of way.

It is contended by the appellant that to so hold would be to take from the appellant his property without due

133 Miss.—55

process of law, in violation of the state and federal constitutions; that it requires personal summons upon the defendant, where he is a resident of the locality, to constitute due process.

This is a proceeding *in rem*, and it is well settled that notice of the kind here provided is sufficient in proceedings *in rem*. The act does not impose a personal obligation upon the landowner, but assesses the land itself with the benefits.

The chancellor's judgment being in accord with these views, the judgment will be affirmed.