STROUD *et al. v.* LOPER.

(In Banc. Oct. 14, 1940. Suggestion of Error Overruled, Nov. 25. 1940.)

[198 So. 46. No. 34181.]

Colbert Dudley, of Forest, and A. B. Amis, Jr., of Newton, for appellants.

**O. B. Triplett, Jr.,** of Forest, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

The appellee, complainant in the court below, filed a bill in the Chancery Court for foreclosure of the deed of trust, and collection of the debt secured thereby, with interest and attorney's fees. This note and deed of trust were executed by W. Q. Stroud and his wife on July 13, 1935, in the principal sum of $1,500, due on October 15, 1935, payable to Loper & Company, a partnership. After execution of the note it was assigned as collateral security for a note executed by Floyd Loper and his wife, Nona B. Loper, to the First National Bank of Meridian, Mississippi. Among other collateral assigned as security was a policy of insurance on the life of Floyd Loper with his wife as beneficiary. Floyd Loper, a member of the firm of Loper & Company, died in 1938, and the policy of insurance on his life in favor of his wife, which had been assigned to the bank as collateral security, was paid to the bank, and the indebtedness of Floyd Loper and his wife, Nona B. Loper, was paid therefrom. The note for $1,500, assigned as collateral, as above stated, was by the bank

transferred to Mrs. Floyd Loper without recourse on the 18th day of April, 1938.

It appears from the record that many years prior to the execution of the above note W. Q. Stroud had been a customer of the firm of Loper & Company and the Loper Mercantile Company, the latter being a corporation conducted by Floyd Loper and others, which had taken over the business of Loper & Company, or incorporated it, and had become possessed of the assets, and assumed the obligations of the firm. Afterwards the business was reorganized so as to again become a partnership, in which Floyd and Dewey Loper were partners, the latter having been the bookkeeper of the Loper Mercantile Company, but not a stockholder.

Prior to 1924, and up to 1931, W. Q. Stroud had business dealings with the Loper firm, both partnership and corporation, and delivered cotton to Loper, for the said Loper business, in each of said years, on an understanding that the title to the cotton would pass to Loper & Company or to the Loper Mercantile Company, to be dealt with as it should determine, title and possession being delivered to the said Loper & Company or Loper Mercantile Company with the understanding that the price of the cotton would be fixed, as between Loper and Stroud, on the basis of the market price of cotton on such day as W. Q. Stroud should select to have the settlement, and finally close out the sale of cotton.

Between the years 1924 and 1931 the price of cotton varied, reaching in some of these years a price considerably in excess of the price in 1931, when the transaction was closed out between Stroud and Floyd Loper, manager for the said firm or corporation. During this period Stroud had purchased various goods and merchandise from Loper & Company or the Loper Mercantile Company, which were charged on the books of Loper & Company or the Loper Mercantile Company. Had the cotton been closed out during some of the previous years the price would have considerably exceeded, at some period, the

amount of the account due by Stroud to the Loper Company or the Loper Mercantile Company.

During this period between 1924 and 1931 Stroud and his wife gave to the Loper Mercantile Company, or to Loper & Company, notes secured by a deed of trust upon the property owned by Stroud, one of the notes being for the sum of $5,000, which note had been assigned as collateral security to the First National Bank of Meridian, to secure a debt due by Loper & Company or the Loper Mercantile Company to the First National Bank. It was the contention of Stroud that the $5,000 note and deed of trust was given as accommodation paper, and that he did not owe Loper & Company or the Loper Mercantile Company anything during the period in which the respective concerns were doing business; but that Floyd Loper sought his accommodation paper to strengthen his credit since he was at the time in financial difficulties; offering proof to show by others than himself that this was accommodation paper, and not a debt as between him and Loper & Company or the Loper Mercantile Company, but was a binding obligation in favor of the bank, which was a purchaser for value without notice.

There was evidence sufficient to show, as the chancellor found, that the note and deed of trust in question were not accommodation papers, but were given to secure the account carried on Loper's books against Stroud under the circumstances stated. The testimony in the case is voluminous, and it would be difficult to epitomize it in an opinion. The testimony is conflicting; and the rule is well settled that decisions of the chancellor on conflicting evidence are binding on this court; also, where there are two or more reasonable theories to be deduced from testimony, that the chancellor is entitled to draw the conclusion, and his judgment thereon is binding, unless manifestly wrong.

It is contended by the appellant, and was contended in the court below, that the agreement with reference to the price of cotton, above stated, was void and of no effect, because it was a gambling transaction, violating the laws

of the state against dealing in futures; and was also void because no reasonable time was fixed in the contract by Stroud in regard to the price.

In the case of Burgson & Co. v. Williams, Smithwick & Co., 155 Miss. 351, 121 So. 817, there was an agreement of sale of cotton, with actual delivery thereof, the final price to be fixed by either party within a specified time, based on New York cotton quotations for the same grade of cotton, which was held to be not illegal under sections 2300 and 2303, Code of 1906, having reference to gambling contracts and future dealings in cotton. It was also held that the price of the commodity need not be definitely fixed at the time of sale, provided the contract of sale contains an express or implied provision by which price may be rendered certain in the future.

In the contract here involved the price could be fixed at any time by W. Q. Stroud on the basis of the market price of cotton on the day named by him for so doing. It was therefore a matter which could be made certain and binding without future negotiations, or additional understandings between the parties to the contract, as Stroud had the absolute right to fix the price on the day selected by him, without regard to the consent of Loper & Company or the Loper Mercantile Company. The contract price was capable of being made certain by his mere demand for the price of all the cotton delivered on the day named. We do not think this violates any statute or public policy of the state.

It is true that one or the other of the parties might gain or lose by reason of the fixing of the price on such day, because of a variance from the market price on the day the cotton was delivered; but that is immaterial. The evidence was sufficient to support the chancellor's finding as to the agreement, and the validity of the agreement as found by him is supported by the authority above stated. There was also evidence sufficient to support the chancellor's finding that there was a compromise by Loper & Company or the Loper Mercantile Company,

through Floyd Loper, by which the debt shown by the books of Loper, and by the previous note and deed of trust, was compromised and settled by taking the note above mentioned, upon which the suit was brought, for $1,500. Indeed, this settlement was stated by Stroud in a letter to the First National Bank, and is shown by ample evidence in the record to support the chancellor's finding. We have examined all the contentions of the appellant, and do not find any ground sufficient to cause a reversal of the judgment of the court below. The judgment is affirmed.

Affirmed.