LEE v.
INDIAN CREEK DRAINAGE DISTRICT NUMBER ONE ETC., et al.

No. 42492　　　　January 21, 1963　　　　148 So. 2d 663

*Roberson, Luckett & Roberson,* Clarksdale, for appellant.

*McClure, Fant & McClure,* Sardis, for appellee, Indian Creek Drainage District Number One of Panola, Quitman and Tunica Counties, Mississippi.

*Dulaney & Dulaney,* Tunica, for appellee, W. D. Garrett, Jr.

RODGERS, J.

This is an appeal from a decree of the Chancery Court of the First Judicial District of Panola County,

Mississippi, in a condemnation proceeding brought by the Indian Creek Drainage District Number One of Panola, Quitman and Tunica Counties (hereinafter called the Drainage District) against appellant and W. D. Garrett, Jr., lessor, to acquire a certain 55.72 acres of land described in the petition. The petition seeks the acquisition of a perpetual easement for flood purposes on the lands of appellant, on which W. D. Garrett, Jr. has a lease.

The proceedings herein were instituted in the chancery court under the provisions of Sec. 4692, Miss. Code 1942, Rec., et seq., and written objections were duly filed, as provided for in this Code section. The appraisement by the commissioners and objections filed by the landowner and lessee were in due time heard by the chancellor, on oral and documentary evidence. A decree was rendered by the court sustaining the application of the drainage district to acquire the land described in the appraisement for the purpose of flood control. The appraisement of the commissioners was raised from $4,279 to $6,000. The decree directed that the total sum awarded be allocated between the landowner and the lessee so that the landowner will receive $5,035.45 and lessee $964.55. The landowner appealed.

Appellant, Mrs. Ethel Carter Lee, complains that the decree of the chancery court should be reversed, and assigns seven grounds for reversal. The errors assigned may be divided into two general propositions, namely: (1) The chancellor erred in the amount he established as the value of appellant's reversionary interest. (2) The allocation or division of the proceeds of the damage to the land under the ''before and after rule'' was wrongfully or erroneously set up by the chancellor because appellant is, as a matter of law, entitled to the value of her reversion, plus rents which are lost by the taking of the easement by the Drainage District, and an abatement for the present payment of the rent. Appellant

contends that the lessee is only entitled to the difference between the rental value of the unexpired term and the rent reserved in the lease. The appellant also contends that the chancery court should have required the drainage district to have paid into court a sum equal to the damage done the landowner and the lessee, and that the decree should not have awarded lessee, W. D. Garrett, Jr., any part of the landowner's reversionary interest, either as profits on his rental contract or by way of abatement of future rents.

The first question that presents itself is simply, Did the chancellor allow appellant enough for her reversionary interest in the land acquired? The answer to this question of course involves the entire lawsuit because a full discussion is necessary to determine her reversionary interest. We begin therefore by discussing the total damage to the entire property to be acquired by the Drainage District by reason of the easement to flood the land here involved.

The petition seeks the acquisition of a perpetual easement on the land described for the following reasons:

"(a) For the permanent storage and temporary detention, either for both, of any waters that are impounded, stored, or detained, by floodwater retarding structure, designated as site Y-9a-14 in the aforesaid amended plans of the district for Yazoo River — Indian Creek Watershead, the same to be located on the DeWitt T. Hicks Farm.

"(b) Said easement shall include the right of ingress and egress, at any time, over and upon the above described land of the said Ethel Carter Lee for maintenance and inspection.

"(c) That the said Ethel Carter Lee, her heirs and assigns shall have the right and privilege to use the above described land at any time, in any manner and for any purpose not inconsistent with the full use and

enjoyment thereof by the complainant, its successors and assigns, of the rights and privileges herein sought.''

It is the contention of appellant that since the petition seeks acquisition of an easement ''For the permanent storage and temporary detention, either or both, of any waters that are impounded * * *'', that the entire 55.72 acres becomes valueless, and, moreover, since the Drainage District has a right to flood the entire tract, it must be assumed that appellant cannot use this tract nor will she be able to cross the land acquired to reach seven acres of farmland she owns on the other side of a creek, away from the main body of her property.

However, it will be observed that immediately following the above-quoted, these words appear: ''* * * stored or detained, by floodwater retarding structure, designated as site Y-9a-14 in the aforesaid amended plans of the district for Yazoo River — Indian Creek Watershed, the same to be located on the DeWitt T. Hicks farm.'' What is meant by floodwater stored or detained by a retarding structure mentioned in the amended plans and which is located on the farm of DeWitt T. Hicks? The testimony shows that the plans require the construction of a dam on the property of Mr. Hicks, which is below the property of appellant. This dam will be constructed so as to permit water to drain through the dam in a 36-inch pipe to let the water drain out in stages until it has reached a predetermined level. The final level of water permanently impounded by the dam will cover .86 of an acre on the land belonging to appellant. The easement here involved does not seek to permanently impound more than one acre of water on the land of appellant, and on that basis the chancellor determined the damages to landowner and lessee.

The testimony introduced in this case as to the total damage to the land ranges from $4,000 to $9,997. Wit-

nesses for appellant base their valuation upon the assumption that the entire tract will become valueless, and that seven acres of land across the creek will have a limited access. Witnesses for Drainage District based their valuation upon the assumption that the property would be flooded occasionally but seldom to such an extent as to cover the entire property sought to be acquired. It was the contention of the Drainage District that the easement sought to be acquired on the property would not prevent the use of the land for pasture purposes, and for row crops most of the time, and that the easement would not interfere with the use of the land on the north side of the creek.

(Hn 1) We believe it would serve no useful purpose to detail the testimony of the various witnesses because a careful reading of this record indicates that the chancellor's opinion as to total damages is not against the great weight of the evidence. Members of this Court may not agree with the result reached by the trial court as to damages done land by the acquisition of private property through eminent domain proceedings, but the jury (or chancellor, as the case may be) is the judge of the weight and worth of the testimony.

(Hn 2) In the instant case we are of the opinion that the total amount of damages assessed by the chancellor, both as to reversionary interest of the landowner and damages done to the present value of the leasehold, is supported by the preponderance of the evidence.

The second proposition raised by appellant is that the allocation or division of the proceeds of the damages to the land under the "before and after rule" was erroneously adopted and used by the chancellor in this case because the landowner was entitled to her reversionary interest in the land, plus rents due which are lost because of the taking of the easement, less an abatement for the present payment of rent. This proposition has given this Court considerable concern because many

years ago it adopted the minority view upon the question of apportionment of compensation awards between the landowner and lessee, and for that reason we have again carefully reviewed the authorities on this proposition.

(Hn 3) We are convinced that the chancellor was correct in requiring the litigants to develop their case as to damages under the so-called "before and after rule." This rule has been expressed by this Court in the following language: "When a part of a larger tract of land is taken for public use, the owner should be awarded the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public." Mississippi State Highway Commission v. Hillman, et al., 189 Miss. 850, 198 So. 565. We pointed out the rule and listed authorities on the question of perment damages to land in the case of Union Producing Co., et al. v. Joe N. Pittman, not yet reported (No. 42,451, rendered November 19, 1962.) See also Mississippi State Highway Commission v. Stout, 242 Miss. 208, 134 So. 2d 467.

In the case of Mississippi Highway Commission v. Strong, 240 Miss. 756, 129 So. 2d 349, this Court expressly held that "Our Court has adopted the difference between the 'fair market value of the whole property immediately before the taking and the fair market value of the whole property immediately after the taking without considering general benefits or injuries resulting from use * * * for which the land is to be put, that are shared by the general public.' rule * * *", citing authorities.

(Hn 4) We are also of the opinion that the chancellor was correct in making an award (single) as to damages to the whole property. Where there are different in-

terests or estates in the property acquired by condemnation, the proper course is to ascertain the entire compensation to be awarded as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights.

The textwriter in 18 Am. Jur., Eminent Domain, Sec. 239, p. 872, has expressed this rule in the following language: "* * * The rule is generally recognized (though not invariably followed) that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates, rather than to take each interest or estate as a unit and fix the value thereof, or damage thereto, separately." 18 Am. Jur., Eminent Domain, Sec. 239, p. 872. See also Anno. 69 A. L. R. 1263.

In the case of Board of Mississippi Levee Commissioners v. Johnson, et al., 66 Miss. 248, 6 So. 199, this Court held that the whole premises should be valued and apportioned between landlord and tenant.

In the case of Board of Levee Commissioners for Yazoo and Mississippi Delta v. Nelms, et al., 82 Miss. 416, 34 So. 149, this Court required appellant to pay the tenant for his crop, although it had previously paid the landlord the value of the crop at the time the land was taken by eminent domain. The tenant should have been made a party to the original proceedings.

The great weight of authority is in accord with the foregoing rule. See Grand River Dam Authority v. Gray, 138 P. 100 (Okla. 1943); Hare v. Ft. Smith & W. R. Company, 148 S. W. 1038 (Ark. 1912); City of Waco v. Messer, et al., 49 S. W. 822 (Tex. 1932); State of Missouri, ex rel., McCaskill v. Hall, 28 S. W. 2d 80 (Mo. 1930); 69 A. L. R. 1256; South Carolina State

Highway Department v. Hammond, et al., 120¹ S. E. 2d 21 (1961); State, ex rel., State Highway Commission v. Douglass, 344 S. W. 2d 281 (Kansas 1961).

A more difficult problem arises after total damages to the entire estate is ascertained. This problem is succinctly stated in Powell on Real Property, Vol. 2, Sec. 242, p. 286, as follows: ''When leased property is condemned, two major questions are raised: (a) is the lessee entitled to receive some part of the award, and (b) if so, how shall the lessee's share be determined.

''It is everywhere recognized that the lessee is entitled to compensation for the interest in land of which he has been deprived, unless he has barred himself therefrom by a provision in the lease ending his interest in the premises on its condemnation. * * *
''In between these two extremes (whole and partial acquisition of property) are two varieties of condemnation which create controversy. These are: (a) condemnation of an estate in fee simple absolute in a physical part of the leased premises, and (b) condemnation of a chronological part of the ownership of the whole leased premises. Such partial condemnations could be treated as pro tanto abrogations of the lessee's obligation to pay rent and this is the position taken in a minority of jurisdictions. On the other hand, such partial condemnations could be treated as a taking of a part of the lessee's estate, for which full payment must be made to the lessee, leaving the lessee's obligation to continue paying the full original rental to the lessor unaltered. This is the regrettable position taken by the majority of jurisdictions. * * * It would be more businesslike and reasonable to hold (with the present minority) that the partial taking causes a corresponding diminution in the lessee's rent thereafter payable, that the lessee gets the net value of the partial taking of his interest and that the lessor gets, as an ingredient in his award, the present value of the diminu-

tion of rent.'' See also Anno., 3 A. L. R., Eminent Domain, Sec. 3, p. 290.

Under the majority view of the authorities, the rule is that when the entire leasehold is condemned in fee, this damage is the present value of the unexpired lease-hold — rental value — and the rent reserved (promised to be paid) in the lease. When the leasehold is partially condemned, under this view, wherein the rental obligation continues unabated, the rental value before and after condemnation must be computed and the measure of damages is the present value of the difference between the two. It is thus expressed, when the entire leasehold is taken in fee, the rental value, less the rent reserved for the term, equals the lessee's damage. When the leasehold is partially condemned under the majority view, the damage is determined by subtracting the rental value after the condemnation from the rental value before the condemnation. 3 Tiffany, Real Property, Sec. 904 (3d Ed. 1939); 2 Nichols on Eminent Domain, Sec. 5.23 (3d Ed.); p. 35, Iowa Law Review, Vol. 143 (1957-8), p. 284.

(Hn 5) In Mississippi, however, we have adopted the minority rule that the taking of a portion of demised premises operates as an apportionment of the rent and dissolves the relation of landlord and tenant pro tanto. Thus, the award of total damages to the property is apportioned between the landlord and the tenant so as to give the landlord the value of his reversion, and rents under the contract, less an abatement for present payment. The damage to the leasehold is determined by awarding the tenant the value of his contract (which includes a reduction in his future rents because of loss of the use of a portion of the leased premises), less the rents due under the terms of his contract, plus the abatement earned for the present payment of rent to the landlord. Board of Mississippi Levee Commissioners v. Johnson, supra.

Appellant complains that this Court approved a different method to determine the damages to a tenant in the case of Mississippi State Highway Commission v. Madison County, 242 Miss. 471, 135 So. 2d 708. In that case, however, we pointed out that "We are not to be understood as committing ourselves to a holding that the methods used by Mr. Trussell in determining the damage and apportioning the same are the only true and correct methods." We also called attention to the fact that this case did not conflict with the Johnson case, supra. The obvious reason the case was affirmed is that the jury returned the proper verdict as to damages due the county, although the evidence was not in accord with the minority view as to the amount due the tenant under the rule adopted in the Johnson case. The interest of the tenant had been previously settled, and he was therefore not involved in the suit. Moreover, there were special damages to the land in the Madison County case which created a complete severance by a limited access road. This is not involved in the present case. We cannot agree with the argument that the easement in the instant case completely severs the land of appellant by floodwaters, nor do we believe from the evidence that appellant will be unable to farm the land on the north side of the creek. On the other hand, it is apparent to us that the entire area will seldom be flooded to the extent that this land cannot be used as pasture land, and that it may be used for row crops most of the time.

(Hn 6) We are therefore of the opinion that the chancellor followed the proper method and procedure in determining the damage to the whole property, and in making apportionment between the interest of the landlord and tenant, in accordance with the rule in force in our jurisdiction. The judgment of the trial court on disputed facts will not be disturbed on appeal unless clearly erroneous or against the weight of the

evidence. Fleming v. Fleming, 213 Miss. 74, 56 So. 2d 35; Sullivan v. Keller, d. b. a. City Plumbing & Appliance Co., 239 Miss. 458, 123 So. 2d 695; Osborn v. Thomas, et ux., 221 Miss. 393, 74 So. 2d. 757; Sharp, et al. v. Learned, 202 Miss. 393, 32 So. 2d 141; Stroud v. Loper, 190 Miss. 168, 198 So. 46.

We do not find manifest error in the trial and decree of the chancery court, and, for that reason, this case is affirmed.

Affirmed.

*McGehee, C. J., and Lee, Kyle and Ethridge, JJ.,* concur.