ETHRIDGE, Chief Justice:
This case involves the use of part of the proceeds of condemned land, where the partial taking had the effect of destroying the usable value of the balance, to reconstruct certain improvements on the remaining land for its necessary and continued use by the life tenant. We hold that on the particular facts the chancery court was warranted in ordering investment of part of the condemnation award to rebuild on the other land the destroyed improvements.
I.
Earl C. Bradley, by his will probated July 7, 1958, appointed his son, Amos Bradley (appellee) as executor without bond, and waived ■ inventory, appraisement and accounting. He devised all of his estate except the home place to this son without *656 any condition. 'As to the home place, the will provided:
II. I hereby give, devise, and bequeath unto my son, Amos Bradley, my home-place where I now live in Alcorn County, Mississippi, being twenty-four acres, more or less, in the Southeast Quarter of Section 3, Township 2, Range 7 etc., in Alcorn County, Mississippi, the same to be his during his natural life, and the remainder at his death to my other children, Syble Howell, Rady E. Bradley, Sue Lee Scott, J. R. Bradley, Mary Sellers, Rose Emma Davis, Edna Earl Ervin, Martha Helen Daniels, James K. Bradley, T. A. Bradley, and M. C. Bradley, share and share alike; and if either of my said children should predecease my said son, Amos Bradley, then the share of the said child dying prior to the death of the said Amos Bradley shall go to the children of said child so dying in equal shares.
This twenty-four-acre tract was not located on a public road. Testator had acquired and owned at his death a private road which led from the home place to the public road on the north. After Earl Bradley died in 1958, Amos Bradley, the life tenant, and his wife used the property by farming a' small portion of it, and raising livestock and chickens. Amos rented to another the main house, but there was a little two-room cabin which he and his wife used as a place to spend the night. They had a home in Corinth, and every afternoon after work they went to the land, tended the livestock and spent the night in the two-room house, feeding the livestock the next morning and returning to Corinth, only a few miles away, for work.
In 1964 the State' Highway Commission filed a condemnation suit to take a right of way for a limited access highway, running north and south through the land. The Commission took 5.92 acres for the highway, leaving 2.34 acres on the west side and 12.19 acres on the east, upon which the main dwelling is situated. The right of way destroyed the private road from this tract running north to a public road, the water line connected with the city’s water system, the fences, a small pond, and the two-room house, used by Amos and his wife.
Amos Bradley filed a petition in chancery court, making the eleven remainder-men defendants. He averred the above facts, and that the highway department appraised the property at $13,750, which appeared to be a reasonable compensation; that a substantial part of the award would constitute damages to the property not taken; and that petitioner was entitled to enjoy the full fruits of a life estate arid to use from the award funds necessary to replace fences, build a pond, a small residence, re-establish water connections, and obtain a means of access. Petitioner also asserted that it had been necessary for him as life tenant and executor to employ counsel to advise him about handling the funds to be received, and they should be managed under supervision of the chancery court, especially since there may be contingent remainder-men. He asked for a reasonable solicitor’s fee for legal services rendered for the executor and life tenant in the condemnation proceedings and the presentation of this cause, and that the court authorize the expenditure of a necessary portion of the proceeds of the condemnation award to erect these improvements on the remaining land.
A month later Amos Bradley again petitioned the court, stating that the Commission had paid $13,750, and pursuant to chancery decree the clerk had invested the funds in a savings and loan association; that the life tenant was entitled to full use of the land during his life and the profits from it, and, on account of the complexity of the situation, it was necessary to bring these proceedings into chancery court and to employ a law firm to represent him for an agreed fee of $1,000. The petition averred certain costs for *657 the proposed necessary reconstruction on the remaining' land, and asked the court to direct it. The remaindermen denied the petition, and asserted that the entire proceeds of the condemnation award should be invested, with the interest only going to the life tenant.
The chancery court held: It was the testator’s intent that his son Amos should have the use of the twenty-four acres during his life. He could not foresee that the Commission would take a portion of the land and disturb its use by the life tenant. The testator’s will should be carried out as far as practicable, and in order to do that, certain adjustments must be made in the use of the property. Application of some of the funds in question was necessary. The life tenant should be placed in as nearly the same position as he was prior to the Commission’s taking the property, and to do so, it was necessary to build fences, construct a stock pond, replace a small frame dwelling, and drill a well, with a pump and pump house. The court found these improvements are not only for the use and benefit of the life tenant, but also for the remaindermen. The question of obtaining a means of access to the property was held in abeyance, at petitioner’s request, subject to further order of the court. The clerk was directed to deduct from the proceeds ($13,750) held by him the sum of $3,135.05 to be used as follows:

After these deductions, the balance of $10,614.95, less court costs, was directed to be invested in a savings and loan association, with the interest to be paid to the life tenant for his life, and upon his death the corpus to be distributed to the remaindermen. The trial court said:
It is further evident that it was necessary to employ counsel to resolve the complicated legal questions raised by this condemnation proceeding, and this proceeding in this court, which inured to the benefit of all of the parties, and in order to determine the handling of the funds received from the State Highway Commission.
The clerk was directed not to disburse the designated funds until petitioner furnished him satisfactory evidénce that the improvements have been completed and Certification of their costs.
II.
The usual procedure, in the distribution as between life tenant and remaindermen of proceeds of condemned property, is to appoint a trustee to invest the proceeds and to turn over the income therefrom to the life tenant. The theory is that the award stands in the place of the realty and must be maintained as a whole, with the life tenant receiving the income and the corpus being reserved for ultimate distribution to the remaindermen. Annot., 91 A.L.R.2d 963 (1963).
In other circumstances, however, the courts have in effect granted partition of the fund realized from the condemnation. When this is done, the present cash value of the life estate is arrived at, taking into ' consideration the age and health of the life tenánt and mortality tables. The present values of the separate interests are deter- ' mined and awards made to the parties *658 according to such valuations. Lee v. Indian Creek Drainage District, 246 Miss. 254, 148 So.2d 663 (1963); Mississippi State Highway Comm. v. Madison County, 242 Miss. 471, 135 So.2d 708 (1961); Annot., 91 A.L.R.2d 963-974 (1963). The Madison County case stated that the court was not approving any particular method of making an apportionment. The method would depend upon the particular circumstances of each case. Mississippi State Highway Comm. v. Hemphill, 176 So.2d 282 (Miss.1965) ; Hemphill v. Miss. State Highway Commission, 245 Miss. 33, 145 So.2d 455 (1962).
Another procedure, less frequently used, is for the proceeds to be invested in like realty, so that the life tenant would be placed, as nearly as possible, in the same position in which he was before the realty, represented by the condemnation award, was taken. Bonner v. Peterson, 44 Ill. 253 (1867); Lucas v. Lucas, 104 Tex. 636, 143 S.W. 1153 (1912); United States v. 380 Acres of Land, 47 P.Supp. 6 (D.C.Ky.1942); See Kelly v. Neville, 136 Miss. 429, 101 So. 565 (1924); Annot., 91 A.L.R. 2d 963, 965 (1963). The reinvestment cases involving condemnation have been those of a total taking, and a reinvestment of the proceeds in like real property. In the instant case, there was only a partial taking, but a virtual destruction of the usable value of the remaining land without the replacement of some of the condemned improvements.
The chancery court considered all of the present circumstances, and utilized a variation on this third approach of reinvestment of the proceeds in land similar to that condemned. It directed that about three-thirteenths of the proceeds of the condemnation award should be used to reconstruct improvements on the remaining lands held in life estate and remainder, so that the life tenant could enjoy the fruits of the life estate. This was in accord with the intent of the testator, who apparently did not contemplate condemnation of part of the land and virtual destruction of its usable value for the life tenant.
Mississippi Code Annotated section 518 (1956) provides that, where a will directs the executor as to the sale of property and management of the estate, “the directions of the will shall be followed by the executor, * * Although this is a restatement of the executor’s duties in equity, section 518 nevertheless emphasizes the significance of the testator’s intention. As was indicated in Madison County, a mechanical rule governing the disposition of proceeds from condemnation cannot be utilized in all cases. 242 Miss, at 480, 135 So.2d at 712 (1961); Note, 34 Miss.L.J. 346 (1963).
Although the case involved a complete rather than partial taking, United States v. 380 Acres of Land, 47 F.Supp. 6, 7 (D.C.W.D.Ky.1942), summarizes many of the considerations applicable in the present case:
It was the evident intent of the testator that the adopted daughter (the present life tenant) have the use of the property as a home as long as she lived. This purpose would be defeated if the proceeds should be divided between the life tenant and the remaindermen, as the amount which the life tenant would receive would not be sufficient to provide a similar home for an indefinite period of time. This is not a voluntary sale of the property by any of the parties in interest. It has been changed from real estate into cash by the exercise on the part of the Government of its dominant power of eminent domain. The life tenant would prefer to retain title, possession and use of the real estate in question, and she would have the right to do this except for the present proceedings which are not of her choosing. In view of the nature of the right of eminent domain, I believe the parties who are thus divested of title should be protected in their former rights as be *659 tween themselves insofar as it is possible for the Court to so protect them. The most reasonable and practical way for this to be done in the present case is to have the proceeds paid by the Government for the property in question to be reinvested in other suitable real es-state, the title to which is to be taken in accordance with the provisions of the will of J. A. Hill concerning the property condemned. This does not give the life tenant the power to arbitrarily reinvest the funds. The interests of the remaindermen should be considered, and any valid objection which they may wish to make to the proposed reinvestment will be given due consideration. * * *
Moreover, as the chancery court found, these reconstructions on the remaining land of improvements taken by condemnation will inure to the benefit not only of the life tenant but of the re-maindermen. If the destroyed improvements are not rebuilt on the remaining land, it will have no practical value either for the life tenant or ultimately for the remaindermen. Also, a life tenant placing improvements on real property at his own expense has no right of recovery against the remaindermen. Collier v. King, 251 Miss. 607, 170 So.2d 632 (1965).
We do not think the chancery court abused its discretion in allowing the attorney’s fees. Miss.Code Ann. § 633 (1956) provides:
In annual and final settlements, the executor, administrator or guardian shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate if the court be of the opinion that the services were proper and rendered in good faith; 4* -I' -S'
The court was warranted in concluding that under all of the circumstances the attorneys’ services were rendered “in the management or in behalf of the estate,” and that “the services .were proper and rendered in good faith.” The proper management, handling, and preservation of funds derived from the condemnation proceeding required the executor and life tenant to seek the aid of the chancery court, and to submit the matter to its jurisdiction for proper decrees in regard to those funds. This action inured to the benefit of all parties, including the re-maindermen. Certainly this was within the sound discretion of the trial court. King v. Wade, 175 Miss. 72, 166 So. 327 (1935).
Affirmed.
BRADY, PATTERSON, SMITH and ROBERTSON, JJ., concur.