WOOTEN v. HICKAHALA DRAINAGE DISTRICT ET AL.

[77 South. 795, Division B.]

1. DRAINS. *Formation of drainage districts. Notice to landowner. Statute.*

   Laws 1912, chapter 195, as amended by Laws 1914, chapter 269, providing for the organization of drainage districts do not contemplate that the published notice to the owners of the land shall be directed to each owner by name. The proceedings prescribed were and are *in rem* and are of such a nature as would arrest the attention of all interested persons and any other method would be impracticable.

2. CONSTITUTIONAL LAW. *Delegation of legislative power to chancery court.*

   Laws 1912, chapter 195, as amended by Laws 1914, chapter 269, providing for the creation of drainage districts is not unconstitutional because it confers or imposes jurisdiction upon the chancery court in cases wherein the proposed district is to embrace territory situated in more than one county.

Appeal from the chancery court of Tate county.

HON. J. G. McGOWAN, Chancellor.

Suit by R. B. Wooten against the Hickahala Drainage District and others. From the decree, complainant appeals.

The facts are fully stated in the opinion of the court.

*M. H. Thompson,* for appellant.

The Constitution of the United States of America, section 1, of article XV, of the articles in addition to an amendment of the Constitution prohibits any state from passing any law depriving any person of life, liberty or property without due process of law.

Under the first drainage laws of Mississippi known as The Alcorn Act, the chancery clerk was required to mail notices of the intention of the board to create the district, as well as assessment of benefits, to each owner of the lands contained in the district and this method of the notice of the landowners was the embodiment of the legislature's idea of taking property by "due process of law" and also met the interpretation of the supreme court of Mississippi as to the meaning and import of "due process of law." *Brown et al.* v. *Board of Levee Comrs.,* 50 Miss. 468.

But the laws under which the district in question was organized dispensed with this kind of process entirely, providing only that notice of the intention of the board to create the district, as well as notice of the assessment of benefits, to be published for two weeks in a newspaper having a general circulation in the district, no copy of said notice is required to be mailed to non-resident landowners or affidavit made that his residence or post office address is unknown. I submit that the legislature has not the authority and power to make such radical change in the notice to be given to landowners.

In *Brown et al.* v. *Levee Comrs.,* 50 Miss. 468, the supreme court of Mississippi, in defining the power of the legislature over process says: "The provision of the bill of rights that no person shall be deprived of life, liberty or property, except by due process of law inhibits the legislature from dispensing with personal service where it is practicable and has been usual under the general law." It does not take from the legislature

power to amend the law and change the formula of remedies; provided, the fundamental right of personal notice, actual or constructive in personal suits, is not taken away. This cannot be designated as an action *in rem.* Chapter 269, Laws 1914, section, requires that "notice be given to the landowners," and then proceeds to outline a method of giving this notice, which, we respectfully submit, falls short of the constitutional guarantee that no person's property shall be taken without "due process of law." See *Balch* v. *Glenn,* 85 Kan. 735; Amer. Ann. Cases, 1913, page 406.

The appellant does not contend that constructive notice in a reasonable and sufficient form, and likely to reach the congnizance of the landowners is not such, notice as is justified by the judicial interpretation of due process of law, and we respectfully submit that the notice provided for by the drainage laws of Mississippi in question is not sufficient or likely to reach the cognizance of the owner. *Pierce* v. *City of Huntsville,* 64 So. 301.

The drainage chapter in question provides that the chancery court, where the land is situated in more than one county shall proceed to organize the drainage district and sections 3913, 3920, 3921 and 3922, provide the methods by which parties may be brought into chancery court, Mississippi Code of 1906. None of which provision are contained in the drainage act in question; we therefore respectfully submit that one kind of process for one class of cases, and another kind of process for another class of cases, in acquiring jurisdiction in the same court, is not permissible.

While the legislature may change the form, the fundamental rights cannot be disregarded. *Brown et al.* v. *Levee Comrs.,* 50 Miss. 468, 478. The publication in the case at bar does not meet the requirements of chapter 296, Laws of Miss. 1914, in the following particulars: First, notice to the landowners fails to meet the requirement of section 1 of said chapter 269,

in that the landowners' names are not set out; second, notice to the persons, owning or interested in lands in said district of the filing of engineer's · report is defective in that there is an erroneous description of the metes and bounds of the district, under which said defective notice, said district was organized, and later by a blanket order, under another notice attempted to be perfected; third, the notice of the assessment of benefits is vague, indefinite and insufficient, because the bulk description of the land is not such description as was and is contemplated by section 7, page 337, of said chapter 269, Laws 1914.

Appellant herein, complainant in the court below, respectfully submits that the drainage chapter in question, to-wit: chapter 195 of the Laws of 1912, as amended, violates sections 159, 160 and 161, of the Constitution of the state of Mississippi of 1890.

These sections of the Constitution confer and define the jurisdiction of the chancery courts of Mississippi, said section 159 enumerating matters in which the chancery court has jurisdiction; said section 160 giving chancery courts jurisdiction to cancel deeds, remove clouds on title, etc., while section 161 gives said court jurisdiction, concurrent with the circuit court, over suits on official bonds, and in no instance is the chancery court given jurisdiction over drainage matters, drainage systems being a modern project and unknown to the laws of Mississippi prior to 1890. Therefore the only instance in which there is a possibility for the chancery court to acquire jurisdiction in matters in drainage is in subsection A of section 159, of the Constitution, "all matters in equity or subsection F," all cases of which said court had jurisdiction under the laws in force when this Constitution was put in operation. However chapter 195, Laws 1912, as amended, invests the chancery courts with the authority to establish drainage districts where the lands embraced is situated

in more than one county, and appellate jurisdiction where the lands are situated in one county.

We respectfully submit that the establishment of a drainage district is not a matter of equity. "Equity is defined to be that system of justice which was administered by the high court of chancery in England." *Smith* v. *Everett,* 50 Miss. 575; *Bank of Miss.* v. *Duncan et al.,* 52 Miss. 740.

The state Constitution is a limitation, and not a grant of power. The mandates of the Constitution are the supreme law to the legislative, executive and judicial departments of this government. *State* v. *Skaggs,* 46 So. 268.

The legislature cannot vest in the chancery courts duties and powers, other than those embraced in the sections of the Constitution creating and defining the powers and duties of the chancery courts of Mississippi. *Bank of Miss.* v. *Duncan et al.,* 52 Miss. 740; *Smith* v. *Everett,* 50 Miss. 575; *Powell* v. *McCamey,* 143 Pacific, 752; *State* v. *Tincker,* 166 S. W. (Mo.) 1028.

The vesting in the chancery courts the authority and duty of organizing a drainage district cannot be justified under the police power of the state. While the courts cannot inquire into the wisdom of the legislature in exercising, in a reasonable way, the police power, however, the police power must be exercised within constitutional limitations. *State* v. *Arminstead,* 60 So. (Miss.) 778; *State of Arkansas* v. *Kansas & T. Coal Co.,* 96 Fed. 353.

We do not contend that the creation of a drainage district is not within the power of the legislature and that the legislature may delegate the power and authority to create drainage districts to some body or tribunal, but we contend that the power and authority cannot be delegated to a court, the chancery courts of the state, whose jurisdiction over property and persons is prescribed by the Constitution, and which constitutional

provisions do not specifically or inferentially. include the establishment and supervision of drainage districts, and in fact said power being indirectly prohibited, in that it is not specifically granted.

The drainage laws in question, to-wit, chapter 195 of the Laws of 1912, as amended, violate section 170 of the Constitution of the state of Mississippi, in that the legislature delegates the fiscal and civil affairs of a county to a board other than a board of supervisors.

Said section 170 of the Constitution making the board of supervisors the sole agency for the handling of county affairs, and said chapter 195 of the Laws of 1912, as amended delegates certain acts in the creation of drainage districts to a board of commissioners, which said acts are not reviewed by the board of supervisors, to-wit the estimate of the costs of the ditch, location of the main and lateral ditches, and the probable cost of all work to be done, which filed with the clerk is not to be reviewed or approved by the board, said findings being final, no appeal therefrom being provided for. Section 6, page 335, Laws 1914.

Said chapter also provides that the commissioners shall issue the bonds of said district, which action of the commissioners is not reviewed or approved by the board of supervisors. Section 15, page 342, Laws 1914.

In *Cox* v. *Wallace,* 56 So. 461, at page 464, subsection 5, Chief Justice MAYES, substantially holds that the board of supervisors are to be the sole agencies through which drainage districts may be organized, or that the agencies must be an arm of the board of supervisors, and report all of its findings to the board of supervisors for adjudication. This decision was had under the Code drainage, or "Alcorn Act," which said act made it the duty of the commissioners to report to the board of supervisors all of their acts and findings for approval or disapproval by said board of supervisors. *Ex parte*

*Fritz,* 38 So. 722; *Board of Supervisors of Yazoo County* v. *Grable,* 72 So. 77.

In the case of *Lowe* v. *Black Bayou Drainage Dist.,* 66 So. 643, it seems, from the statement of facts, that the district was created by the chancery court, however the jurisdictional question was not raised. We respectfully submit that the case should be reversed and the injunction prayed for herein made perpetual.

*J. F. Dean* and *Holmes & Sledge,* for appellee.

As is well known to this court, in passing upon the constitutionality of any act, the rules of construction in such cases are very strict. Every law passed by the legislature is *prima-facie* constitutional. *Cole* v. *Humphreys,* 78 Miss. 163.

Where there is a reasonable doubt of its constitutionality the courts should uphold the law. *Natchez R. R. Co.* v. *Crawford,* 55 So. 598. It is no longer an open question that the state has the right to establish drainage districts for the purpose of reclaiming swamp and overflowed lands and to promote the public health thereby, and to administer the affairs of such districts the legislature may vest authority in any tribunal that it may designate. The case of *Hagar* v. *Reclamation District,* reported in 111 U. S. 701, is a leading case on this subject and has been consistently followed by all other states in which the questions there decided have arisen, including the state of Mississippi, so that this court need not look for authority elsewhere. *Cox v. Wallace,* 100 Miss. 536; *Jones* v. *Belzoni Drainage District,* 102 Miss. 796.

Appellant complains that the power of taxation is granted to the chancery court and no such power can be given to the chancery court by the legislature. As stated above, authority to carry into effect the drainage laws of the state may be vested in any tribunal the

legislature may designate, but if this were not true, the
contention of appellant would be unsound for he con-
fuses taxation with assessed benefits. The chancery
court in passing on benefits assessed against each tract
or parcel of land in a drainage district is not assessing
or passing on the assessment of taxes, but is simply and
only seeing that a fair and equitable distribution of
benefits should be and is assessed against each separate
piece of land or property. This question has been fully
settled in this state by this court in the case of *Edwards
House* v. *Jackson,* 91 Miss. 429. It will be remembered
that in the case at bar all the lands were in Tate county
and as a matter of fact the chancery court did not make
or pass any orders but they were made by the board
of supervisors.

Appellant also raises the time-worn question of
"notices," "due process of law," etc. This question
has been settled for generations by every state in the
Union and by the United States court in decisions too
numerous to quote. The court has but to refer to the
revenue laws of different states to see that notice by
publication to a taxpayer is all that is required and that
such notice is "due process;" but this question has
been settled in Mississippi as in other states by deci-
sions of its highest court and we refer to two of these
recent cases. *Yazoo County* v. *Grabble,* 111 Miss. 893;
*Simmons* v. *Hopson Drainage Dist.,* 72 So. 901.

Under the drainage scheme provided for by the law
here attacked, the taxpayer, if he might be termed such,
has had notice of every step of the proceeding by publi-
cation and "at the end and before final liability he had
an opportunity to object to all" (111 Miss. 893), and
had the right to appeal if he felt aggrieved at the assess-
ment of benefits against him. He elected not to appeal
but to attack the law and he waited until after a large
portion of the revenues of the district had been ex-
pended.

The court has said the valuation as fixed by the board of commissioners can only be questioned by an appeal to the circuit court. *Donnell* v. *Revenue Agent*, 109 Miss. 579. This court knows, as a matter of common knowledge, that millions of dollars of bonds have been issued under the laws here attacked; millions of dollars of improvements have been made, so beneficial in their nature that the good work is spreading to every part of the state, and this court knows that to declare these laws unconstitutional would work untold confusion and loss, and for these reasons alone this court would be slow to declare the law unconstitutional, even without the plain authorities here cited showing its constitutionality, but after the reading of these authorities there can be no doubt much less a reasonable doubt, of its constitutionality and the decree should be affirmed.

*F. H. Montgomery* as *amicus curiae.*

Counsel for the appellant in his most excellent brief, has stated fully the facts, as well as the questions involved, so I shall proceed directly to a discussion of some of the legal points involved without further elaboration.

Was the notice of the landowners in the proposed drainage district provided for by section 1 of chapter 195, of Laws of Mississippi of 1912, which notice was attempted to be employed in this case, sufficient to constitute due process of law?

Due process of law, or the law of the land, was defined to be the general law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial. It means that every citizen shall hold his life, liberty and property under the protection of general rules which govern society.

The question here is, whether or not the notice to landowners provided by chapter 195 of Laws of 1912, and sought to be employed in this case, was due process of law. It is important at the outset, therefore, to see

what the law of the land was in reference to the giving of judicial notice at the time of the enactment of the statute. *Bardwell* v. *Collins,* 46 N. W. 315, 44 Minn. 97; 9 L. R. A. 152; 20 Am. St. Rep. 547.

It will be unnecessary to search beyond the judicial decisions of this court, for "ancient landmarks" which have been recognized and observed in judicial proceedings in Mississippi. In the case of *Brown* v. *Board of Levee Commisioners,* 50 Miss. 468, the court speaking through Justice SIMRALL said: "The provision of the bill of rights that no person shall be deprived of life, liberty or property, except by due process of law, inhibits the legislature from dispensing with personal service, where it is practicable, and has been usual under the general law. It does not take from the legislature power to amend the law and change the formula of remedies: provided the fundamental right of personal notice, actual or constructive, in personal suits, is not taken away. Courts of common law and equity cognizance have always exacted personal notice, if practicable; that is, if the defendant was commorant within the territorial jurisdiction, and if he could be found. But in order to prevent a failure of justice, *ex necessitate,* if personal service could not be given, an inferior mode such as in the wisdom of the legislature might be thought likely to impart actual notice, has been allowed such as leaving a copy of the summons with a member of defendant's family, or affixing it to the door of his domicile and publication in a newspaper in certain cases."

In the light of this decision which has never been overruled or modified so far as I can find, it is plain that the law of the land in Mississippi has always required in personal actions, personal notice where the defendant was a resident of the county, or could be found in the state.

In the case of *Larson* v. *Larson,* 82 Miss. 116, this court held that a personal judgment could not be render-

ed on summons by publication, against a non-resident defendant. Manifestly, then a judgment rendered against a resident defendant on summons by publication would be unauthorized. This is in no sense of the word an action *in rem*. The organization of a drainage district under this law bears every characteristic of an action *in personam*.

This being the case, then does the method of giving notice to the landowners provided by the act, fulfill the requirements of the due process of law clause in our Constitution? I do not mean to argue to the court that constructive notice in a case of this nature, which was fair, and which was reasonably calculated to arrest the attention of all landowners in the district, would not answer this requirement. I am not arguing that question one way or the other now, but only the question, whether or not the notice provided by the act in any case could be held to meet the requirements of our constitutional provision.

In the case of *Brown* v. *Board of Levee Commissioners,* 50 Miss. 468, the court had under consideration the sufficiency of the notice provided for under chapter 53, page 217, Acts of 1872, which was an act providing for a proceeding in chancery for the purpose of quieting doubtful tax titles held by the board of levee commissioners, in Boliver, Washington and Issaquena counties. The notice provided by section 2 of this act is singularly similar to the notice provided by chapter 195 of Laws of 1912.

Your honor will observe that the statute of 1872 under consideration by the court in *Brown* v. *Levee Commissioners, supra,* is much more comprehensive than the Act of 1912, in its provision in reference to the giving of notice to the landowners. But this court in holding the statute unconstitutional said: "It proposes to to bind and conclude the interests of persons in private property without designating them by name as defendants, without a good or any sufficient reason for such

departure from the general law. Because it expressly denied personal service of process upon the defendants, when it is evident that·many, perhaps most of them, are residents of the county and state, and amenable to such process; because in a personal suit, it directs notice by publication without designating the names of the defendants, when many, if not most of them, by the general law, were entitled to personal service of notice, and when that form of publication is allowable, and in instance where the complainant does not know and has not the means of finding out the names of parties; because the statute and the proceedings under it are unusual, extraordinary, and not calculated to afford a full investigation, and proper determination of any separate controversy that might arise, but likely to result in wrong and injustice to many individuals; because the proceeding authorized is extraordinary and unsual, without precedent in the legislative and judicial history of the state; because it had the seeming of giving judicial sanction, and thereby conclusiveness, to a decree for the sale and transfer of property, when the legislature itself was incompetent to direct the sale to be made, and when, according to the law of the land, the chancery court could not take cognizance and adjudge in the circumstances named in the act.

We are of opinion therefore, that the decrees of the respective chancery courts are *coram non judice,* and of no validity.

It appears to me that each of these reasons is applicable to the circumstances of this case. I am unable to draw any distinction in principle between the case quoted from and the case at bar. *Wilkinson* v. *Gaines,* 96 Miss. 688. Does chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, violate the Constitution of the state of Mississippi? I contend it does. Sections 159, 160, and 161 of the Constitution of the state of Mississippi, set forth a catalog of the subject-matters

over which the chancery court shall have jurisdiction. In none of these sections is the chancery court given power to establish or administer the affairs of a drainage district. The most elastic construction that could possibly be placed upon these sections, would not permit the chancery court to assume jurisdiction over the organization and administration of a drainage district.

There are certain familiar maxims long since promulgated by the courts of this country, and universally followed by the appellate courts of the different states, which will aid us in pursuing this inquiry. I direct the attention of the court first to the following maxim, where those things are mentioned to which a court has jurisdiction. No other is implied. *Marbury* v. *Madison,* 1 Cranch, 137; Brown on Jurisdiction, p. 1, sec. 1.

Another maxim, equally ancient and well established, is that the express mention of one thing implies the exclusion of another. *People* v. *Hastings,* 29 Calif. 449; Brown on Jurisdiction, p. 47, sec. 10; See, also, *Sandy Bayou Mandamus Case,* 87 Miss. 125, 144. This is but the converse of the first maxim quoted, both of which constitute familiar legal learning, and require no citation of authority.

My contention is simply this, that the Constitution of the state by sections 159, 160 and 161, cataloged the subject-matters over which the chancery court should have jurisdiction; and that by these sections, the jurisdiction of the chancery court is limited to these matters, and all other matters are excluded.

That the Constitution itself clearly places this construction upon these sections, by lodging jurisdiction of all other matters not specially confided to the chancery and other courts, in the circuit court.

Even if it could be argued that the organization of drainage districts was a valid exercise of the police power, the power could not be exercised in contravention of the Constitution. The police power must yield to the

Constitution. *State* v. *Armstead.* (Miss.), 50 So. 778.
The contention here is clear cut, and I need not pursue
the argument further.

This act has been before this court for consideration
in the case of *Jones* v. *Belzoni Drainage District,* 102
Miss. 796; *Low* v. *Black Bayou Drainage District,* 107
Miss. 583; and *Board of Supervisors* v. *Grable,* 72 So.
77, but singularly none of the questions raised by the
appellant in this case were adverted to either by counsel
or court.

COOK, P. J., delivered the opinion of the court.

The Hickahala drainage district was organized under
chapter 195, Laws of 1912, as amended by chapter 269,
Laws of 1914. The proposed district was wholly in the
county of Tate, and the proceedings were initiated by
the requisite number of landowners of the proposed
district, residing in Tate county, and the organization of
the district was by the order of the board of supervisors
of that county. The procedures prescribed by the stat-
utes were literally complied with. The notice directed to
the owners of the lands embraced in the proposed district
was published in a newspaper as prescribed, and the
notice that the board would, upon a given date, proceed
to assess the benefits accruing to the several tracts of
land composing the district. These notices were not
given to the owners by name, but were addressed to the
owners of lands described.

The appellant, in his bill of complaint, alleged that
the notices of the organization of the district and the
assessment of benefits prescribed by the statutes were
not sufficient under the Constitution; in other words, the
statutory plan deprived him of his property without
due process of law. Upon the presentation of the
bill of complaint to the chancellor a temporary injunc-
tion was issued by him restraining the collection of the
assessed benefits to his land. From a decree dissolv-

ing the injunction an appeal is prosecuted to this court.

It seems to us that the statutes do not contemplate that the published notice to the owners of the land shall be directed to each owner by name.

The proceedings prescribed were and are *in rem,* and are of such a nature as would arrest the attention of all interested persons. Indeed, any other method would be impracticable. If it is necessary to name the owners in the published notice, the scheme would be impossible. An abstract of title of all the lands would have to be made, and the time and labor necessary to discover and declare the titles to each separate subdivision of land would destroy all attempts to organize improvement districts. In fact, this very point has been decided by this court, and the narrow view was rejected. *Cox* v. *Wallace,* 100 Miss. 541, 56 So. 461; *Jones* v. *Drainage District,* 102 Miss. 796, 59 So. 921.

It is contended that the law is unconstitutional because it confers or imposes jurisdiction upon the chancery court in cases wherein the proposed district is to embrace territory situated in more than one county. It is said that the Constitution limits the jurisdiction of that court, and the legislature is without power to extend or limit the same. We think *Yazoo County* v. *Grable,* 111 Miss. 893, 72 So. 777, disposes of that contention.

There is no merit in the contention that the description of the territory forming the proposed drainage district is "unintelligible." We have gone over the engineer's description with due care, and we find no difficulty in locating each tract of land within the limits of the area which is to compose the district.

While we believe that all of the questions raised in this appeal have already been determined adversely to appellant's contention, the fact that the improvement district was organized and bonds authorized and sold before the suit was begun seems to call for an opinion in this case.

*Affirmed.*