# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00522-SCT

*CHARLES WILLIAM BRANAMAN, CARRIE ANN*
*BRANAMAN AND ROBERT D. CAIN*

*v.*

*LONG BEACH WATER MANAGEMENT DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/05/97 |
| TRIAL JUDGE: | HON. WILLIAM L. STEWART |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | VIRGIL G. GILLESPIE |
| | AMY E. GILLESPIE |
| ATTORNEY FOR APPELLEE: | JOAN ELIZABETH LUND |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 01/14/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/8/99 |

**BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The present appeal concerns the procedures implemented according to Section 51-29-39 of the Mississippi Code of 1972 as a means to acquire easements across the Branaman and Cain property on behalf of the Long Beach Water Management District (hereafter the District). On November 27, 1996, the District filed its Petition for Approval of Appraisement for Easements in the Chancery Court of the First Judicial District of Harrison County, Mississippi, against Mr. Cain. A similar petition was filed against the Branamans on December 11, 1996, together with a Fiat, Summons, and Notice to each defendant individually. Attached to the Fiat and the Petition for Approval of Appraisement was a property appraisal report regarding each defendant's property in order to obtain necessary easements. Before filing the petition against Mr. Cain, the District mailed letters to him and the Branamans dated November 22, 1996, and December 6, 1996, respectively, offering to purchase a permanent easement, a temporary construction easement, and an access easement. The purpose of the actions was to take a portion of each owner's property for drainage purposes.

¶2. On December 16, 1996, an objection to the appraisement and a demand for jury trial was filed on

behalf of Mr. Cain and the Branamans. On December 21, 1996, the chancery court entered two interlocutory decrees granting the District a permanent perpetual easement, a temporary easement, and an access easement across the Branamans' and Mr. Cain's properties. That same day the District deposited into the registry of the chancery court $3,800 for the Branamans' property and $5,575 for the Cain property.

¶3. A hearing on the petitions to determine just compensation and a motion to dismiss filed by the defendants was conducted on February 21, 1997, before Chancellor William L. Stewart. The court overruled the motion to dismiss that same day. Chancellor Stewart rendered his Opinion and Ruling of the Court on March 14, 1997, and entered the Final Judgment on April 7, 1997. The landowners appeal to this Court in a consolidated appeal, alleging a violation of their due process rights. Finding no due process violation in the lower court, despite the lack of safeguards in the statutory procedure, we affirm the findings of the chancellor in this case.

## STATEMENT OF THE LAW

### I.

### WHETHER SECTION 51-29-39 OF THE MISSISSIPPI CODE IS UNCONSTITUTIONAL IN THAT IT DOES NOT CONTAIN SUFFICIENT DUE PROCESS GUARANTEES.

¶4. In their motion to dismiss, and on appeal to this Court, the landowners allege that the statutory procedure implemented by the District in this case violates due process notions. Specifically, they contend that the insufficiency of the notice provisions in the statute renders it unconstitutional on its face.

¶5. When we are asked to determine the constitutionality of a statute, "it is the duty of this Court to follow and apply a statute enacted by the Legislature unless it is clearly unconstitutional . . . we are not justified in striking a statute down unless its unconstitutionality appears beyond every reasonable doubt." *Ivy v. Robertson*, 220 Miss. 364, 370, 70 So. 2d 862, 865 (1954).

¶6. The statute in question here, § 51-29-39 "Appraisement by commissioners as alternate method to acquire land," reads in pertinent part as follows:

> In lieu of the method provided in sections 51-29-29 to 51-29-35 for acquiring land and making compensation for damages, the drainage commissioners may adopt the following method for acquiring lands and making compensation for damages, to wit:
>
> The commissioners may, at any time after the organization of the district, appraise the value of any land taken or to be taken for the purposes of the proposed improvement, according to the plans of the district on file, and the damages resulting to the owners from such taking; provided that the board may specify, in case of any property, the particular purpose for which and the extent to which easement is desired, and the assessment of property in such case shall represent only the damages resulting from the use so specified. They may make a complete appraisement of all such lands, taken or to be taken, at one time, or at any time make appraisements as it becomes necessary or desirable. *When the commissioners shall have made their appraisement of lands taken, they shall certify to the same and file it with the clerk of the chancery court of the county in which the land lies. The court, or chancellor in vacation, shall enter an order designating the date, time, and place for the hearing of objections to such appraisement, either at a regular term*

***of the court or in vacation; and the clerk shall issue a summons directed to the sheriff of the county or counties of the state in which any landowner or other person interested may reside, commanding him to summon such owner or owners or interested persons to be and appear at the time and place named.*** . . .

If any owner is not satisfied with the amount allowed by the commissioners for lands taken by reason of the construction of such proposed system according to the plans of said district, he shall file with the clerk of the court ***written objections thereto, in specific terms, prior to the time designated for said hearing.***

If on the hearing by the court or chancellor in vacation no written objections are filed, a decree confirming the appraisement shall be rendered, and upon payment of said amount to the chancery clerk, the commissioners of the district may enter upon and take possession of the said property and appropriate it to the public use of said district; and the title of said property shall thereupon vest in said district. The clerk shall receipt upon the decree for the money paid, and said decree with the receipt thereon shall be recorded.

***If written objections are filed prior to the time set for the hearing, the court or chancellor in vacation shall proceed to hear the objections filed, trying the cause or causes without the intervention of a jury.***

No judgment by default shall be entered against an owner or person interested residing in this state unless it appear that he has been ***duly served with summons at least two days prior to the return day***, and no judgment by default shall be rendered against any nonresident or unknown person or persons interested unless proper publication has been made.

Miss. Code Ann. § 51-29-39 (1990) (emphasis added).

¶7. As stated by the appellants, the ultimate goal of eminent domain is to insure that landowners receive due process and just compensation. They argue that the procedures contained in Title 11, Chapter 27 of the Mississippi Code should have been followed since those procedures provide safeguards to assure that the landowner's rights are protected. However, § 11-27-33 (1972) specifically states, "The provisions of this chapter shall not be applied to cases provided for by section 233 of the Constitution, or to those cases covered under the provisions of section 51-29-39, Mississippi Code of 1972."

¶8. The power of eminent domain must be exercised in satisfaction of due process, including adequate notice and the opportunity to be heard. Statutes granting this power are to be interpreted as follows:

The power of eminent domain is in derogation of common right. Therefore the statutes conferring the right of eminent domain are to be strictly construed. They are not to be extended beyond their plain provisions. The right to exercise this power is strictly limited to the purposes expressed in the statutes conferring the power. Where there is any doubt of the right to exercise the power, the landowner is entitled to the benefit of such doubt.

***Ferguson v. Board of Supervisors of Wilkinson County***, 149 Miss. 623, 630-31, 115 So. 779, 780 (1928) (*citing* ***Wise v. Yazoo City***, 96 Miss. 507, 519, 51 So. 453 (1910)). "Before one may be judicially deprived of an important right, one must be given (a) reasonable advance notice of a hearing at which (b) one is afforded a meaningful opportunity to assert and defend that right." ***American Fidelity***

*Fire Ins. Co. v. Athens Stove Works, Inc.,* 481 So. 2d 292, 295 (Miss. 1985); *see also **Mullane v. Central Hanover Bank & Trust Co.**,* 339 U.S. 306, 314 (1950); ***In re Validation of $7,800,000 Combined Utility System Revenue Bond***, 465 So. 2d 1003, 1018 (Miss. 1985); ***Covington v. Covington***, 459 So. 2d 780, 782 (Miss. 1984).

¶9. The District contends that the Branamans and Mr. Cain received adequate notice of the taking of their property. They argue that the Branamans and Mr. Cain are residents who were personally served with the petition and the Fiat, Summons, and Notice well in excess of the time dictated by the statute. In addition, Mr. Gillespie, the attorney for both defendants, requested and was granted additional time to prepare his case. The chancellor in this case afforded the appellants due process by allowing them additional time to prepare for trial. However, we find that the statute itself does not contain sufficient due process safeguards. Section 51-29-39 only requires two days notice in which to prepare for a hearing before the District can take private property from private citizens and determine what just compensation should be. This is not adequate notice.

¶10. The District and Amicus Town Creek Master Water Management District of Lee, Pontotoc, Prentiss, and Union Counties confuse the issue presented by arguing that the appellants challenge the entire drainage act. This is simply not the case. The appellant's only challenge is to Miss. Code Ann. § 51-29-39, the statutory method providing drainage districts an alternative method to acquire land. Necessarily that would include an attack on § 51-7-33 which allows for the "in lieu" method for acquisition of private property. The District also cites several Mississippi cases upholding the constitutionality of the drainage act. *See **Cox v. Wallace***, 100 Miss. 525, 56 So. 461 (1911) (holding personal notice to landowners not required in the organization of the district or the assessment of benefits, only notice by publication is required); ***Minyard v. Pelucia Drainage Dist.**,* 133 Miss. 847, 98 So. 225 (1923) (holding that the failure of the property owner to file a claim for damages within the time provided by Section 4446 , presently Section 51-29-35, is a waiver of his right to compensation for such right of way); ***Self v. Indian Creek Drainage Dist. No. 1***, 158 Miss. **7,** 128 So. 339 (1930) (addressing the lower courts approval of an assessment of benefits); ***Wooten v. Hickahala Drainage Dist.**,* 116 Miss. 787, 77 So. 795 (1918) (finding that the notices of the organization of the district and assessment of benefits as required by the statutes are constitutional); ***Riverside Drainage Dist. v. Buckner***, 108 Miss. 427, 66 So. 784 (1914) (upholding the constitutionality of a trial without a jury and to allow a drainage district to pay damages into the chancery clerk instead of directly to the landowner and finding that the law conferring the right of eminent domain is a general as opposed to a special law); ***Jones v. Belzoni Drainage Dist. of Washington County***, 102 Miss. 796, 59 So. 921 (1912) (holding that the drainage act as a whole does not deprive the landowner of his property without due process of law); ***Aron v. Board of Commissioners of the Chuquatonchee Consolidated Drainage Dist. of Clay and Chickasaw Counties***, 294 So. 2d 188 (Miss. 1974).

¶11. A statute should not be allowed to stand simply because other sections in the same chapter have survived constitutional attack or the particular section has survived an attack under unrelated, distinct facts and circumstances. "[T]he provision complained of is not so inseparably connected with the remaining portions of the act that, if the said provision were stricken down, the remainder of the act would also have to go down . . . " ***Hudson v. Stuart***, 166 Miss. 339, 351, 145 So. 611, 613 (1933). Some of these cases are dated before the 1914 enactment of the alternative method of land acquisition. The opinion in *Aron* does not address the type of notice required for the actual taking of land. Although § 51-29-39 was mentioned as the method used to take the property, the issue presented today for this Court's consideration was not even discussed in the *Aron* opinion. *Aron*, 294 So. 2d at 190. None of the other cases cited

*supra* deal with the specific due process claim before the Court on this appeal, the lack of sufficient notice in order to prepare for the opportunity to be heard regarding just compensation.

¶12. The District argues that the appellants had plenty of notice since they had met personally with Commissioner Wren, they had attended the public meeting and had the opportunity to look at all the District's plans and when the appraiser for the district went to the appellants' property, they accompanied the appraiser across their property. While this is true, it was not until they received the offer of settlement that the appellants knew what the District was willing to pay for the taking of their property. Furthermore, until they were served with the complaint from the District, they were unaware they would need to hire an attorney and an appraiser to contest the offer made by the District for the taking of their property.

¶13. For the above reasons, we find that Miss. Code Ann. § 51-29-39 is unconstitutional on its face regarding the very narrow due process issue of adequate notice to prepare for trial. Two days from the date of service of process is inadequate time to hire an appraiser and prepare for a trial on the issue of just compensation. Until such time as the Mississippi Legislature addresses the issue of adequate notice, the Mississippi Rules of Civil Procedure will control the amount of notice that a landowner should be given after a complaint is filed.

¶14. In this case, however, the chancellor allowed the appellants due process when he continued the hearing to provide them adequate time to hire an appraiser and prepare for trial on the issue of just compensation. As a result, we are compelled to affirm the lower court's judgment in this case.

## II.

### WHETHER THE STATUTORY PROCEDURE FOLLOWED IN THIS CASE VIOLATES DUE PROCESS REGARDING PAYMENT OF JUST COMPENSATION AND BY DEPRIVING LANDOWNERS OF THEIR RIGHT TO A TRIAL BY JURY.

¶15. Appellants also contend that § 51-29-39 is unconstitutional, because it violates their right to a trial by jury and Section 17 of our Constitution regarding payment of just compensation. They maintain that the District was allowed to take their property without first paying monetary damages directly to them. The chancery court granted an interlocutory decree allowing the district to acquire the easements and pay the amount of compensation according to the District's appraisal into the clerk of the court. Both of these contentions are without merit.

¶16. The constitutionality of allowing the chancery court to try the case without a jury trial has been upheld in *Riverside Drainage Dist. v. Buckner*, 108 Miss. 427, 66 So. 784 (1914). Furthermore, this Court stated long ago in *Carradine v. Estate of Carradine*, 58 Miss. 286, 293 (1880), "[T]he granting of a jury trial, in the Chancery Court, where no statute prescribes one, is always discretionary with the chancellor, as has several times heretofore been announced by this court." *See also Tillotson v. Anders*, 551 So. 2d. 212, 214 n.2 (Miss. 1989) (explaining that "Section 31 [of article 3 of the Mississippi Constitution] is of no effect in chancery.")

¶17. Regarding appellants' contention that it is unconstitutional to allow the District to pay the clerk of the chancery court the compensation instead of directly paying the landowners, we once again in *Riverside Drainage District* upheld the constitutionality of this procedure. In addition, Miss. Code Ann. § 11-27-33 specifically excludes cases covered under § 51-29-39 from application under the provisions in chapter 27

on eminent domain. Appellants' arguments on this issue are without merit.

## III.

## WHETHER THE COURT ERRED IN GRANTING AN INTERLOCUTORY QUICK TAKE OF THE PROPERTY.

¶18. Nowhere in the Drainage District Act is there a procedure for a quick take. The entry of the interlocutory decree divested the appellants of their property and granted the right of entry to the District without notice, without a hearing, and without any due process procedures. The District does not address this contention in its brief other than with a general argument that its actions in this case satisfied due process, and the appellants had ample notice that the easements across their land would be necessary in order to complete the project. We find that it would serve no purpose to set aside the interlocutory decree entered by the court on December 20, 1996. However, there must be specific authority granted by the Legislature to the District to allow a quick take of the easements needed. Section 51-29-39 does not provide this authority. We therefore caution district commissioners against future attempts to utilize a quick take procedure under these circumstances.

## IV.

## WHETHER THE CONDEMNER MUST FOLLOW THE REAL PROPERTY ACQUISITION POLICIES LAW WHEN PUBLIC FUNDS ARE USED IN THE PROJECT.

¶19. Title 43, Chapter 37, Section 1 et seq. is entitled "Real Property Acquisition Policies Law." Miss. Code Ann. § 43-37-1 (1993). "The provisions of this chapter shall be applicable only to the acquisition of real property under the laws of this state for use in any project or program in which federal funds are used." *Id*.

¶20. The District argues that this chapter does not apply to the alternative, chancery court procedure of securing easements utilized by the District. Its first argument is that the District operates under statutes specifically designed for drainage districts, so under the rules of statutory construction, the more specific law controls. It cites ***Kilgore v. Barnes***, 508 So. 2d 1042, 1046 (Miss. 1987), to support this contention. In ***Kilgore*** the Court analyzed two statutes that were in direct conflict. In this case, there is no direct conflict.

¶21. The Real Property Acquisition Policies Law governs any acquisition of real property for use in any project in which federal funds are used. The statute does not state that the funds must be used in the actual acquisition of the needed property. There is no dispute that although the District is not using federal funds to acquire the necessary easements, it will use federal funds in the actual construction of the project. Therefore, the "Real Properties Acquisition Policies Law" is applicable to the case at bar and its requirements must be satisfied.

¶22. The main contention by the appellants is that the District did not make all necessary efforts to negotiate with the landowner before instituting a lawsuit. Section 43-37-3(a) (1993) requires that "[e]very reasonable effort shall be made to acquire expeditiously real property by negotiation." The District argues that it satisfied this requirement when it made written offers to the landowners, including a full disclosure and breakdown of each component of the just compensation figure. Mr. Cain did not respond to this offer, thereby foreclosing any further negotiation. The Branamans were only given five days to even consider this offer before a formal suit was filed. However, as the District points out, the Branamans rejected the offer

within that time period. After careful consideration, we find that the District satisfied these requirements.

## V.

## WHETHER THE LANDOWNERS RECEIVED JUST COMPENSATION AS GUARANTEED BY THE MISSISSIPPI CONSTITUTION.

¶23. Section 17 of the Mississippi Constitution provides:

Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

¶24. This Court has elaborated on what compensation is to be paid:

Due compensation is what ought to be made--that is, what will make the owner whole pecuniarily for appropriating or injuring his property by any invasion of it cognizable by the senses, or by interference with some right in relation to property whereby its market value is lessened as the direct result of the public use.

*King v. Vicksburg Ry. & Light Co.*, 88 Miss. 456, 487, 42 So. 204 (1906).

¶25. The appellants argue in general that they did not receive just compensation and that the only way for them to receive just compensation is to reverse the case and remand it to the Special Court of Eminent Domain. This general assertion is unfounded. The record demonstrates that the appellant landowners did receive just compensation. There is no reason to detail the testimony of the two appraisers who testified at trial on behalf of each party. The appellants received a fair trial, and the chancellor has the exclusive power in finding the amount of just compensation. *Lee v. Indian Creek Drainage Dist. Number One*, 246 Miss 254, 148 So. 2d 663 (1963). "Members of this Court may not agree with the result reached by the trial court as to damages done land by the acquisition of private property through eminent domain proceedings, but the jury (or chancellor, as the case may be) is the judge of the weight and worth of the testimony."*Id.* at 262, 148 So.2d at 665.

¶26. The District had the appellants' property appraised by qualified registered appraisers. The appellants presented their own expert appraisal witness to be considered by the chancellor. "When a portion of a larger tract of land is taken for public use, the owner is entitled to be awarded the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remaining tract immediately after the taking." *Mississippi Transp. Comm'n v. Fires*, 693 So. 2d 917, 920 (Miss. 1997). Both the appraisers who testified at trial used the proper so-called "before and after" valuation of the property. At the conclusion of the hearing, the chancellor requested that the parties summarize their testimony and send it to the court in written form for review. The chancellor received an analysis of the just compensation hearing by both parties. After considering all the evidence, the chancellor, by applying the correct standard, raised the amount that had previously been paid into the clerk on behalf of the Branamans and confirmed the amount paid for the Cain easements. We hold that the chancellor was not manifestly wrong in his award of damages in this case.

## CONCLUSION

¶27. We hold that the notice provision in Miss. Code Ann. § 51-29-39 does not comport with due process and consequently is unconstitutional on its face. However, we determine that the appellants here were given due process by the chancellor when he awarded them a continuance to prepare for trial. There is no specific authority in the Drainage District Act that authorizes a quick take of the appellants' land. However, we further find that the appellants are not entitled to a jury trial, were awarded just compensation, and received a fair trial. As a result, we affirm the final judgment of the chancellor in this case.

¶28. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


**McRAE, JUSTICE, DISSENTING:**

¶29. The easement is equivalent to an eminent domain proceeding since the public body is taking Branaman's lands by easement; therefore, the easement should be treated equivalently to that of an eminent domain proceeding. Given such status, a plaintiff in an easement case, as in any eminent domain proceeding, should have access to a jury trial under Article 3, § 31 of our Mississippi Constitution. Section 31 grants the legislature leave to reduce a chancery or circuit court jury's size to nine members, not to vaporize the jury right. Indeed, § 31 states that "[t]he right of trial by jury shall remain inviolate, . . ." Further, since § 31 grants the legislature the mere leave to reduce the size of a chancery court jury, not the power to eliminate that jury right itself, it is evident that the right to a jury trial exists in chancery court.

¶30. Such a reasoned conclusion is viable despite the majority's reference to ***Tillotson v. Anders***, 551 So. 2d 212 (Miss. 1989) that § 31 lacks effect in chancery court. ***See id.*** at 214 n.2. Indeed, ***New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Co. v. Drake***, 60 Miss. 621 (1882), an eminent domain case involving a railroad charter, states, regarding an appeal or objection to an appraisal as here, that "there is no constitutional objection to a jury in the Chancery Court for the trial of the appeal provided for by the charter. . ." ***See id.*** at 626. While ***Drake*** regards a statutory charter, it is useful in the instant case because the statute at issue here has been deemed facially unconstitutional and no longer holds until the legislature acts. Given the statute's unconstitutional status, we revert to § 31 of our Constitution which requires jury trials. ***Drake*** becomes applicable when jury trials are available. Thus, a jury trial should have been granted in this case.

¶31. Regardless, § 31 is quite clear that a jury trial is available to the plaintiff where a dispute exists and money is involved. Yet, even if the majority is accurate in its reliance on ***Tillotson*** and other cases, the case should be transferred to county court where a jury trial may be attained.

¶32. As previously explained, this easement case involves the same situation as would exist with any eminent domain case. Hence, I would reverse for a jury trial. I dissent.