# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02270-SCT

*DENTON WEBB, RUBY WEBB, RACHAEL WEBB
AND DAN W. WEBB*

**v.**

*TOWN CREEK MASTER WATER MANAGEMENT
DISTRICT OF LEE, PONTOTOC, PRENTISS AND
UNION COUNTIES; AND JOHN MORGAN, JIMMY
BUCY, KENNETH OSWALT AND HOUSTON
PANNELL IN THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE BOARD OF COMMISSIONERS
OF TOWN CREEK MASTER WATER
MANAGEMENT DISTRICT OF LEE, PONTOTOC,
PRENTISS AND UNION COUNTIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2003 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND, JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | PAUL NATHAN JENKINS, JR. |
| ATTORNEYS FOR APPELLEES: | THOMAS HENRY FREELAND, III |
| | DAVID R. SPARKS |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 04/07/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from two consolidated cases in the Chancery Court of Lee County, an easement condemnation action by a water district and the landowners' action against the district for damages and other relief.

*Cause No. 46077 filed on August 17, 1993*

¶2.     This controversy originated in the Chancery Court of Lee County, wherein Town Creek Master Water Management District (Town Creek) filed a petition for approval of appraisement of damages of easement, naming as respondents Dan Webb and his wife Rachael Webb.  This petition sought to acquire a permanent easement on which to construct a water retarding structure (Dam No. 48).  Dan and Rachael owned a remainder interest in the property, with Denton Webb and Ruby Webb owning a life estate in the property on which the proposed dam was to be located.  Denton and Ruby were not made parties to the petition.

¶3.     On the same day that Town Creek filed its petition, August 17, 1993, the chancery court entered an interlocutory decree allowing the taking of the property and directing that a hearing for the approval of the appraisal be set down on a date to be set by    the Chancellor.  The Webbs were neither served with the petition nor the interlocutory decree.  Now it is eleven and a half years later, and there has been no hearing for the approval of the appraisal.

¶4.     On August 27, 1993, Dan and Rachael moved to set aside the  interlocutory decree contesting personal jurisdiction because no summons was issued for either of them (nor have they ever been served) and asserting that Town Creek lacked authority for a quick take and that they were deprived of their procedural due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.  There was never a hearing on this motion.

*Cause No. 95-1100 filed on September 22, 1995*

¶5.     On September 22, 1995, after construction of the dam had begun, Dan and Rachael (the named respondents in Town Creek's petition), and Denton and Ruby Webb, filed a complaint in the Chancery Court of Lee County against Town Creek seeking damages for the destruction of their property.  The complaint was amended on October 17, 1995, and on August 20 and 23, 1996.  In the amended complaints the Webbs repeated their prior allegations, and in addition, the Webbs sued the commissioners of Town Creek in their official capacities and alleged that the dam had been completed.  The Webbs sued for actual, consequential, punitive damages, attorney's fees, and for cancellation of the easement and destruction of the dam.  Town Creek answered the original and amended complaints admitting the taking and stating that the only relief to which the Webbs were entitled was just compensation for the property taken.

¶6.     Ultimately, the matter was set for trial on September 14, 1998, but Town Creek moved for a continuance after having filed a notification of a relevant pending case on August 6, 1998.  Further proceedings were delayed because *Branaman v. Long Beach Water Management District*, 730 So. 2d 1146 (Miss. 1999), was pending in this Court.

*Consolidation of Cause No. 46077 and Cause No. 95-1100*

¶7.     On October 13, 2000 (almost seven years after the original petition), Town Creek moved to add additional defendants (the Estate of Denton Webb and his widow Ruby Webb) in Cause No. 46077, and moved for the consolidation of the two causes.  The chancellor granted the motion to consolidate.

3

¶8.     Cross-motions for summary judgment were filed and the court granted Town Creek's motion for summary judgment dismissing the Webbs' claims on September 29, 2003, and certified that judgment as final under M.R.C.P. 54(b).  This appeal followed.[1]

**FACTS**

¶9.     The Webbs own three tracts of land, A, B, and C in Saltillo, Lee County, Mississippi:

> **Tract A** is owned by Dan and Rachael Webb as joint tenants with rights of survivorship.    It contains approximately 28.92 acres and is the residence of Dan and Rachael.

> **Tract B** consists of 42.84 acres and lies east of Tract A.   When cause No. 46077 was filed, Tract B was owned by Dan and Rachael Webb subject to a life estate in Denton and Ruby Webb, whose residence was on Tract B. Denton is now deceased.

> **Tract C** consists of 40 acres and lies east of Tract B.   This tract was also owned by Dan and Rachael, with Denton and Ruby holding a life estate in the property.

¶10.    On October 1, 1992, Town Creek, in conjunction with the Soil Conservation Service, "SCS," appraised a tract of land located in Saltillo, Lee County, Mississippi, in preparation of obtaining a permanent easement for the construction of Dam No. 48.   This appraisal shows the description of Tract A.   The appraisal gave the land a before "take" value of $5,173.00 and an after "take" value of $2,618.00, with the difference being $2,555.

¶11.    On August 17, 1993, Town Creek filed its petition for approval of the October 1, 1992, appraisal, naming only Dan and Rachael as defendants.   The petition described Tract B and did not correlate with the property described in Town Creek's appraisal, which described Tract A.

---

[1]Appellees' Motion for the Postponement of Oral Argument, currently pending before this Court, is dismissed as moot.

4

To date there has not been a hearing on the petition to approve the appraisal. Also, on August 17, 1993, Town Creek obtained an interlocutory decree allowing the taking of the property.

¶12. After the petition and decree were granted, but before construction on the dam began, Denton and Ruby planted pine trees on the property that was subject to the easement. The Webbs' complaint against Town Creek was filed on September 22, 1995.

## ANALYSIS

¶13. "This Court does not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous." *Bank of Miss. v. Hollingsworth*, 609 So.2d 422, 424 (Miss. 1992). However, for questions of law, the standard of review is de novo. *Consolidated Pipe & Supply Co. v. Colter*, 735 So. 2d 958, 961 (Miss. 1999). Moreover, this Court employs a de novo standard in reviewing a trial court's grant of summary judgment. *O'Neal Steel, Inc. v. Millette*, 797 So. 2d 869, 872 (Miss. 2001).

### I. Notice requirement of Miss. Code Ann. § 51-29-39

¶14. The trial court held that Miss. Code Ann. § 51-29-39 does not require notice of a taking of land, when there are no issues regarding public use. Furthermore the trial court held that constitutional due process requirements would be met by allowing time within which to prepare for a hearing on just compensation.

¶15.    Miss. Code Ann. § 51-29-39[2] (Rev. 1990) sets out the procedures to be followed by a water management district taking easements for completion of its plans and specifications:

> In lieu of the method provided in sections 51-29-29 to 51-29-35 for acquiring land and making compensation for damages, the drainage commissioners may adopt the following method for acquiring lands and making compensation for damages, to wit:
>
> The commissioners may, at any time after the organization of the district, appraise the value of any land taken or to be taken for the purposes of the proposed improvement, according to the plans of the district on file . . . When the commissioners shall have made their appraisement of lands taken, they shall certify to the same and file it with the clerk of the chancery court of the county in which the land lies. **The court, or chancellor in vacation, shall enter an order designating the date, time, and place for the hearing of objections to such appraisement, either at a regular term of the court or in vacation; and the clerk shall issue a summons directed to the sheriff of the county or counties of the state in which any landowner or other person interested may reside, commanding him to summon such owner or owners or interested persons to be and appear at the time and place named** . . .
>
> If any owner is not satisfied with the amount allowed by the commissioners for lands taken by reason of the construction of such proposed system according to the plans of said district, he shall file with the clerk of the court written objections thereto, in specific terms, prior to the time designated for said hearing.
>
> If on the hearing by the court or chancellor in vacation no written objections are filed, a decree confirming the appraisement shall be rendered, and upon payment of said amount to the chancery clerk, the commissioners of the district may enter upon and take possession of the said property and appropriate it to the public use of said district; and the title of said property shall thereupon vest in said district. The clerk shall receipt upon the decree for the money paid, and said decree with the receipt thereon shall be recorded.

---

[2]Miss. Code Ann. § 51-29-39 has been amended since the taking occurred. Our ruling in *Branaman v. Long Beach Water Management District*, 730 So. 2d 1146 (Miss. 1999), held that the last provision of the statute was unconstitutional in that the serving of the summons two days before the return day violated due process. The statute was amended to instead provide for 30 days notice before the return day before a default judgment can be entered against the landowner.

If written objections are filed prior to the time set for the hearing, the court or chancellor in vacation shall proceed to hear the objections filed, trying the cause or causes without the intervention of a jury.

No judgment by default shall be entered against an owner or person interested residing in this state unless it appear that he has been duly served with summons at least two days prior to the return day, and no judgment by default shall be rendered against any nonresident or unknown person or persons interested unless proper publication has been made.

¶16. The statute requires (1) a filing of a petition of appraisement; (2) the court or chancellor shall enter an order designating the date, the time, and place for the hearing of objections to such appraisement; (3) that the clerk shall issue a summons for each landowner or other interested person commanding them to appear at the hearing; (4) after being served, the owners may then file written objections to the appraisement; (5) or if no written objections are filed, a decree confirming the appraisement shall be entered. Only after these procedures are followed does the statute allow for the commissioners to enter and take possession of the property.

¶17. This Court has held that statutes granting the power of eminent domain should be interpreted as follows:

The power of eminent domain is in derogation of common right. Therefore the statutes conferring the right of eminent domain are to be strictly construed. They are not to be extended beyond their plain provisions. The right to exercise this power is strictly limited to the purposes expressed in the statutes conferring the power. Where there is any doubt of the right to exercise the power, the landowner is entitled to the benefit of such a doubt.

*Branaman v. Long Beach Water Mgmt. Dist.*, 730 So. 2d 1146, 1149 (Miss. 1999) (citing

*Ferguson v. Bd. of Supervisors of Wilkinson County*, 149 Miss. 623, 115 So. 779, 780

(1928)). Town Creek failed to follow the clear procedures outlined in Miss. Code Ann. § 51-

7

29-39. Denton, Ruby, Dan, and Rachael all had an interest in the property, but not one of them were served. Furthermore, the only two individuals who had a present possessory interest in the property were not made parties to the petition. The chancellor granted the easement without entering an order setting a time and date for a hearing on objections, and no summons had been issued, which was contrary to § 51-29-39.

¶18. Certain entities have been given the right of immediate possession by the Legislature in Miss. Code Ann. § 11-27-81. However, §11-27-81 does not include water management districts within its scope. In *Branaman*, this Court held that, "there must be specific authority granted by the legislature to the District to allow a quick take of the easements needed. Section § 51-29-39 does not provide this authority. We therefore caution district commissioners against future attempts to utilize a quick take procedure under these circumstances." 730 So. 2d at 1152. Miss. Code Ann. § 51-29-39 designates the only procedure by which water management districts may take easements. According to § 51-29-39 notice is required regardless of whether or not there is an issue regarding public use. The trial court erred in holding that no notice was required to the Webbs.

## II. Due process

¶19. In its order, the trial court stated that, "*Branaman* appears to state the concept that (the) constitutional due process requirement may be provided by the court . . . by allowing time within which to prepare for a hearing on just compensation." *Branaman* concerned the Long Beach Water Management District acquiring an easement across Branaman's property. 730 So. 2d at 1148. In *Branaman*, after the District filed its petition for approval of appraisement against the Branamans and also served the Branamans with a Fiat, Summons, and Notice, the

8

Branamans then filed an objection to the appraisement. After the objection was filed, the chancery court granted the easement. Two months after the easement was granted, a hearing was held to determine the issue of just compensation. On appeal, this Court determined that the provision of § 51-29-39 which required only two days notice was unconstitutional. This Court however did not find a violation of the Branaman's due process rights because the trial court had granted the Branaman's extra time to prepare for a trial on the issue of just compensation. 730 So. 2d at 1151.

¶20. The Webbs argue that *Branaman* is distinguishable from the case sub judice because in *Branaman*, the landowners were served with summons, given notice of the hearing and served with a copy of the petition; whereas the Webbs were never given notice, were not served, and Denton and Ruby were not even named in the petition. Town Creek argues that *Branaman* supports their argument that the Webbs' due process rights were not violated because there is no issue of public use involved and the Webbs will and have had ample time to prepare for a trial on the issue of just compensation.

¶21. While Town Creek is correct in its assertion that the Webbs will have ample time to prepare for a hearing on just compensation, this does not negate the fact that the Webbs were not served and the only two persons with a possessory interest in the property were not named in the petition, much less summoned to appear. The Webbs are not disputing that they will have ample time for a hearing on just compensation; the issue that the Webbs raise is whether or not failure to give notice and failure to join interested parties, before the entering upon and taking possession of the property, is a denial of due process and constitutionally prohibited.

9

¶22. In *Branaman*, the parties were served with summons and notice and the Branamans even filed an objection to the appraisement before the easement was granted. In the case sub judice however, the Webbs were not given the opportunity to file any objections with the court before an interlocutory decree was granted, considering they were never even notified that the petition for approval of appraisement of damages had been filed with the court. "The power of eminent domain must be exercised in satisfaction of due process, including adequate notice and the opportunity to be heard." *Id.* at 1149. The Webbs were given neither adequate notice nor an opportunity to be heard before the interlocutory decree was granted which was in violation of their constitutional due process rights and Mississippi's statutory scheme.

¶23. Town Creek argues that *Lemon v. Mississippi Transportation Commission*, 735 So. 2d 1013 (Miss. 1999), supports their notion that notice is only required when there is an issue involving public use. This Court disagrees. First, requiring notice only when there is an issue of public use is contrary to Miss. Code. Ann. § 51-29-39, which requires notice regardless of whether there is an issue of public use involved. Second, in *Lemon* this Court did not hold that the issue of public use is a prerequisite for a notice requirement. The issue *Lemon* determined was whether or not Miss. Code Ann. §§ 65-1-301 to -347 violated due process rights. The Court in *Lemon* summarized the general provisions of the statute:

> ¶ 8. First, MTC "finds it necessary to condemn property." Miss. Code Ann. § 65-1-303(1). Next, MTC files a complaint and declaration of taking in the circuit or county court of the county where the property is located identifying the owner(s), the property, the reason for the taking, and the fair market value as determined by the transportation commission as just compensation for the taking. Miss. Code Ann. § 65-1-303(1)-(3). Further, the complaint and the declaration are to be accompanied by a deposit of a sum in the amount of the fair market value of the property. Upon the filing of the complaint, declaration and deposit, summons is then issued and served on the landowner. Id. § 65-1-303(4).

¶ 9. Whereupon, "title to the land or such other interest therein specified in the complaint and the declaration of taking, together with the right to immediate possession thereof, shall vest in the Mississippi Transportation Commission, and the judge shall enter such orders in the cause as may be required to place the transportation commission in possession and title." Id. § 65-1-305(1) (emphasis added). The landowner is provided an opportunity to file an answer to the Complaint "praying only for a determination of just compensation." Id. § 65-1-309 (emphasis added). Section 65-1-309 also contemplates that the answer contain "[s]uch affirmative defenses or matters as are pertinent to the action." Id. At this point, by statute title has already vested in the MTC. See id. §§ 65-1-305(1) & -309(1).

¶ 10. Section 65-1-313 provides:

After the filing of the plat, the judge, upon motion and ten (10) days' notice by either the transportation department or the owner shall, either in or out of term, hear and determine all issues raised by the pleading other than the issue of just compensation, including, if controverted, questions of necessary and proper parties, title to the land, interest taken and area taken.

This hearing would clearly be after title to the property has passed to the MTC.

735 So. 2d at 1016. Unlike the case sub judice, where the owners were not provided with notice, the property owners in *Lemon* were served with process before the court granted immediate right and title to the property. *Id.* at 1015. However, the landowners in *Lemon*, as in the case sub judice, were denied the opportunity to be heard before the easement was granted. *Lemon* held that Miss. Code Ann. § 65-1-301 to § 65-1-347 were unconstitutional as violative of procedural due process under our state constitution and that, "regardless of the adequacy of the statute's post-deprivation remedies, the statute must provide a pre-deprivation hearing before taking property." 735 So. 2d at 1020. This Court further stated in *Lemon* that, "[o]ur state and federal constitutions prohibit laws which permit deprivation of property without prior notice or hearing." *Id.* (citing *Donovan v. Mayor & Council of Vicksburg*, 29 Miss. 247 (1855)). The Webbs received neither notice or a pre-deprivation hearing which was

11

a clear violation of both their procedural due process rights and pre-deprivation rights of a hearing before taking the property.

¶24. In *Lemon* we quoted the United States Supreme Court that "[i]n situations where the State feasibly can provide a pre-deprivation hearing before taking property, it generally must do so regardless of the adequacy of a post-deprivation . . . remedy to compensate for the taking." 735 So. 2d at 1020 (quoting *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)). This Court notes that due process does not always require the state to provide a hearing prior to an initial deprivation of property. *Lemon*, 735 So. 2d at 1020 (citing *Gilbert v. Homar*, 520 U.S. 924, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997)). However, to satisfy the requirements of procedural due process, "either the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking," is required. *Lemon*, 735 So. 2d at 1020 (citing *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)). There was certainly no necessity of quick action by the State in the case sub judice considering the easement was granted in 1993 and the construction on the site did not start until 1995. Furthermore, there was no impracticality of serving process on the Webbs. Therefore, the Webbs' due process rights were violated by the taking of their property without notice and without a pre-deprivation hearing.

### III. Appraisal

¶25. The Webbs argue that the appraisal on which Town Creek based its easement is invalid and void. Town Creek does not dispute the fact that the appraisal described a different tract of

land than the land on which the actual easement was granted. An updated appraisal was filed with the court on September 14, 2000. The amount of compensation to be awarded the Webbs is a matter that has yet to be tried in the trial court, and as such, the issue should be decided on remand.

**IV.     Whether Town Creek is liable to the Webbs for damages under 42 U.S.C. § 1983 for violation of due process rights, and for loss of the pine trees by virtue of Miss. Code. Ann. § 95-5-10.**

¶26.     The trial court held that because Town Creek was not guilty of violating any rights of the Webbs, that they had no cause of action by virtue of 42 U.S.C. § 1983, and also found that because the taking of the Webb property was not tortious, the Webbs could not recover under Miss. Code Ann. § 95-5-10. This Court finds that the Webbs' due process rights were violated and that the trial court erred in ruling otherwise. Accordingly, the Webbs are entitled to pursue their claims, subject to the requisite applicability, proof and damages, as to be determined by the trial court on remand.

## CONCLUSION

¶27.     This Court finds that the trial court erred in holding that the Webbs were not entitled to notice of the taking of their land. This Court also finds that the lack of notice resulted in a violation of the Webbs' due process rights. Therefore, the summary judgment is reversed, and this case is remanded for a trial on all issues consistent with this opinion.

¶28.     **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**